**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| MALIKIE INNOVATIONS LTD. and KEY PATENT INNOVATIONS LTD., <br><br> Plaintiffs, <br><br> v. <br><br> FOUNDRY DIGITAL LLC; FORTITUDE MINING, LLC; RIOT PLATFORMS, INC.; AND CIPHER DIGITAL INC. F/K/A CIPHER MINING INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 7:25-CV-00567 <br> ) <br> ) **JURY TRIAL DEMANDED** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................ 1

II.  LEGAL STANDARDS ..................................................................................... 1

III.  LEVEL OF ORDINARY SKILL IN THE ART ............................................... 2

IV.  AGREED-UPON TERMS ................................................................................ 3

V.  THE '286 PATENT .......................................................................................... 4

    A.  Technological Background ..................................................................... 4

    B.  Claim 1: "A method for performing, on a cryptographic apparatus, a Montgomery-style reduction in a cryptographic operation" ................................... 5

    C.  Claim 1: "instead of a modulus used in performing a standard Montgomery reduction" ..................................................................................... 7

VI. THE '039 PATENT .......................................................................................... 9

    A.  Technological Background ..................................................................... 9

    B.  Claim 1: "A method for maximizing a number of registers at an end of an iteration of a hash algorithm for use in a next iteration" ...................................... 10

    C.  Claim 1: "said reversing resulting in an average number of words that need to be loaded into the registers per iteration being reduced by at least one half" ......................................................................................................... 13

    D.  Claim 3: "advanced processor architecture to leverage capabilities" ................. 15

    E.  Claim 4: "ARM type processors" .......................................................... 17

    F.  Claim 6: "consuming state values residing in the registers at an end of an iteration at a beginning of a following iteration" ................................................. 18

VII. CONCLUSION ................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
289 F.3d 801 (Fed. Cir. 2002)..............................................................................2, 6, 11

*ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*,
35 F.4th 1345 (Fed. Cir. 2022) ...........................................................................................2

*Collabo Innovations, Inc. v. Qualcomm Inc.*,
No. 6:24-CV-00472-ADA, 2025 WL 3188417 (W.D. Tex. Oct. 7, 2025)..............................12

*GPNE Corp. v. Apple Inc.*,
830 F.3d 1365 (Fed. Cir. 2016)...........................................................................................1

*Halliburton Energy Servs., Inc. v. M-I LLC*,
514 F.3d 1244 (Fed. Cir. 2008)....................................................................................13, 15

*Hormone Rsch. Found., Inc. v. Genentech, Inc.*,
904 F.2d 1558 (Fed. Cir. 1990)...........................................................................................1

*Interval Licensing LLC v. AOL, Inc.*,
766 F.3d 1364 (Fed. Cir. 2014)...................................................................................8, 12, 16

*Liberty Ammunition, Inc. v. United States*,
835 F.3d 1388 (Fed. Cir. 2016)...........................................................................................11

*Malikie Innovations Ltd. v. Mara Holdings, Inc.*,
C.A. No. 7:25-cv-00222-DC-DTG, Dkt. 80 (W.D. Tex. Mar. 12, 2026)..................................3

*Media Rights Technologies, Inc. v. Capital One Financial Corp.*,
800 F.3d 1366 (Fed. Cir. 2015)..........................................................................................19

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014).....................................................................................................2, 16

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc)...........................................................................1, 2

*RECOG IP LLC v. Sephora USA, Inc.*,
No. 6:23-CV-00324-ADA-DTG, 2024 WL 1252373 (W.D. Tex. Mar. 22,
2024) ...................................................................................................................................2

*Saso Golf, Inc. v. Nike, Inc.*,
843 F. App'x 291 (Fed. Cir. 2021) ...............................................................................7, 17, 18

ii

*Versata Software, Inc. v. Zoho Corp.*,
    213 F. Supp. 3d 829 (2016) ...................................................................................................6

## I.    INTRODUCTION

Defendants Foundry Digital LLC ("Foundry"), Fortitude Mining, LLC ("Fortitude"), Riot Platforms, Inc. ("Riot"), and Cipher Digital Inc. ("Cipher") (collectively, "Defendants") respectfully submit this opening brief on claim construction.  While Plaintiffs Malikie Innovations Ltd. and Key Patent Innovations Ltd. (collectively, "Plaintiffs") have asserted five patents in this lawsuit, the parties have narrowed their claim construction disputes to focus on seven terms from just two of the asserted patents:  U.S. Patent Nos. 8,532,286 ("'286 patent") and 8,712,039 ("'039 patent").  For these two patents, the parties dispute (1) whether the preambles of the asserted independent claims are limiting in their entirety (they are); and (2) whether the disputed claim terms render the claims indefinite (they do).

## II.    LEGAL STANDARDS

The words of a claim "are generally given their ordinary and customary meaning" as understood by a person of skill in the art ("PHOSITA") at the time of the invention, read in the context of the specification and prosecution history.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc).  The specification is the "single best guide to the meaning of a disputed term," and "is, thus, the primary basis for construing the claims."  *Phillips*, 415 F.3d at 1315 (internal citations and quotations omitted).  And "when a patent 'repeatedly and consistently' characterizes a claim term in a particular way, it is proper to construe the claim term in accordance with that characterization."  *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1370 (Fed. Cir. 2016) (citations omitted).  Consequently, "[i]t is a well-established axiom in patent law that a patentee is free to be his or her own lexicographer."  *Hormone Rsch. Found., Inc. v. Genentech, Inc.*, 904 F.2d 1558, 1563 (Fed. Cir. 1990).  If a "court deems it helpful in determining 'the true meaning of language used in the patent claims,'" the court may consider extrinsic evidence, including dictionaries, treatises, and expert testimony.  *See Phillips*, 415 F.3d at 1317-18 (citation omitted).

1

**Preambles:** "[A] preamble limits the invention if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." *RECOG IP LLC v. Sephora USA, Inc.*, No. 6:23-CV-00324-ADA-DTG, 2024 WL 1252373, at *1 (W.D. Tex. Mar. 22, 2024) (quoting *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002)). For example, a preamble may be limiting where (1) it "provides antecedent basis for a claim term"; (2) "the preamble is essential to understand limitations or terms in the claim body"; (3) "the preamble recites additional structure or steps that the specification has identified as important"; and (4) "the patentee clearly relied on the preamble to overcome prior art during prosecution." *Id.*

**Indefiniteness:** Invalidity for indefiniteness can be decided during claim construction. *ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*, 35 F.4th 1345, 1349 (Fed. Cir. 2022). A patent claim is invalid as indefinite if the claim, "viewed in light of the specification and prosecution history," fails to "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014).

## III.    LEVEL OF ORDINARY SKILL IN THE ART

Claims are construed from the perspective of a PHOSITA at the time of the invention. *Phillips*, 415 F.3d at 1313. As of the earliest priority dates of the Asserted Patents, a PHOSITA would have had a B.S. degree in computer engineering, electrical engineering, computer science, or a related field, and one to two years of experience working in the field of processor design or specifications as well as a working knowledge of cryptography, a master's degree in computer engineering, electrical engineering, computer science, or a related field, and one year of experience working in the field of processor design or specifications as well as a working knowledge of cryptography, or a PhD in computer engineering, electrical engineering, computer science, or a related field. A person with less education but greater pertinent and relevant industry experience

2

would also meet the standard. For example, someone with 5 years of experience related to computer processors but a degree in a different field may qualify as a PHOSITA.

## IV.    AGREED-UPON TERMS

The parties have agreed upon the constructions for the following terms:

| Patent/Claim | Term | Agreed-Upon Construction |
|---|---|---|
| U.S. Patent No. 8,532,286 ("'286 patent") (Claim 1) | "word" | "unit of data (in bits) that a computer processor can handle in a single operation" |
| '286 patent (Claim 1) | "least significant word" | "word that makes the smallest contribution to the value of the operand" |
| U.S. Patent No. 8,666,062 ("'062 patent") (Claim 1) | "unreduced result" | "result without any reduction to a specific finite field or word size reduction" |

In addition, in the interest of conserving party and judicial resources, the parties have agreed to adopt the Court's constructions from its claim construction order in *Malikie Innovations Ltd. v. Mara Holdings, Inc.*, C.A. No. 7:25-cv-00222-DC-DTG, Dkt. 80 (W.D. Tex. Mar. 12, 2026) for the following claim terms, while preserving their right to appeal those constructions consistent with the positions set forth in their stipulation (Dkt. 99):

| Patent/Claim | Term | *Mara* Construction |
|---|---|---|
| '286 patent (Claim 1) | "perform a replacement of a least significant word of the operand" | Plain and ordinary meaning. |
| '286 patent (Claim 1) | "perform a cancellation thereof" | "add a multiple of the modulus to the operand to zero out the least significant word of the operand" |
| '062 patent (Claim 1) | "unreduced result" | "result without any reduction to a specific finite field or wordsize reduction" |

3

## V.    THE '286 PATENT

### A.    Technological Background

The '286 patent describes techniques for performing modular arithmetic.   Modular arithmetic involves calculations that wrap around a fixed value, called a "modulus," much like the hours on an analog clock restart at 1 after passing 12.

The '286 patent describes an existing technique for performing modular arithmetic called a "Montgomery reduction."   '286 patent, 1:31-46.   The '286 patent describes a Montgomery reduction as follows:

> In Montgomery reduction, calculations with respect to a modulus n are carried out with the aid of an auxiliary number R called the Montgomery radix or base.  When the modulus is a prime number, a good choice of radix is 2 to some exponent, typically chosen as the first convenient power of 2 larger than the modulus. In the following, the exponent of 2 is denoted by L so that $R=2^L$. The Montgomery reduction of a number a with radix R and prime modulus n is the quantity given by $aR^{-1}$ mod n.  The Montgomery multiplication of two numbers is the Montgomery reduction of their product, written as $a \otimes b = abR^{-1}$ mod n.  Calculations are carried out on numbers in their Montgomery form.  The Montgomery form of a number a is defined â=aR mod n.  Conversion to Montgomery form may be carried out via Montgomery multiplication where $â = a \otimes R^2 = aR$ mod n.  Conversion from Montgomery form back to regular form may be carried out by the Montgomery reduction:  $âR^{-1}$ mod n=a mod n, or by the Montgomery multiplication:  $â \otimes 1 = aRR^{-1} = a$ mod n.

*Id.* at 1:47-64.

The '286 patent describes an alternative approach to performing modular arithmetic utilizing different computer operations from a Montgomery reduction.   Specifically, that alternative method utilizes a "replacement" operation instead of "cancellation" operation, which provides a "modified reduction value" to which further mathematical operations are performed:

> In the following embodiments, a system and method are utilized that provide an alternative way in which to produce a Montgomery reduction from below by storing a new precomputed

4

value used to substantially replace the μ and n values used in Montgomery reduction with a single value. This may be done by storing a modified reduction value in the cryptographic apparatus, wherein the modified reduction value, when applied to an operand, input to or generated by, the cryptographic apparatus, performs a replacement for values in a low-order segment which is a target of the reduction, rather than a cancellation thereof, as performed in a standard Montgomery reduction; and performing the reduction from below using the modified reduction value.

'286 patent, 3:27-39; *see also id.* at '286 patent, 4:40-6:65.

The claims of the '286 patent recite mathematical operations for performing modular arithmetic. For example, claim 1 recites:

> A method for performing, on a cryptographic apparatus, a Montgomery-style reduction in a cryptographic operation, the method comprising:
>
> obtaining an operand for the cryptographic operation;
>
> computing a modified operand using a reduction value, instead of a modulus used in performing a standard Montgomery reduction, to perform a replacement of a least significant word of the operand, rather than perform a cancellation thereof, the reduction value being a function of the modulus; and
>
> outputting the modified operand.

'286 patent, 9:22-32.

### B.    Claim 1: "A method for performing, on a cryptographic apparatus, a Montgomery-style reduction in a cryptographic operation"

| Term | Defendants' Construction | Plaintiffs' Construction |
|---|---|---|
| "A method for performing, on a cryptographic apparatus, a Montgomery-style reduction in a cryptographic operation" | Preamble is limiting, and indefinite | Preamble is not limiting, except as to "a cryptographic operation" |

The parties' dispute for this claim term presents two issues: (1) whether the preamble is limiting in its entirety, or only in part; and (2) if the preamble is limiting in its entirety, whether the term is indefinite.

With respect to the first issue, the parties agree that the preamble is limiting at least with respect to "a cryptographic operation," which provides antecedent basis for the term "the cryptographic operation" that appears later in claim 1. *See* '286 patent, 9:26 ("obtaining an operand for the cryptographic operation"). The term "a cryptographic apparatus" is limiting for the same reasons. That language provides the antecedent basis for "the cryptographic apparatus" recited in dependent claim 5. *See id.* at 9:50-52 ("wherein the cryptographic apparatus comprises a Montgomery engine configured to perform the cryptographic operation"). The only other substantive element of the preamble is "a Montgomery-style reduction." *Id.* at 9:23. That claim element is structural because it identifies the "cryptographic operation" recited in the claim and is therefore limiting. *See Catalina*, 289 F.3d at 808 (explaining "when reciting additional structure or steps underscored as important by the specification, the preamble may operate as a claim limitation"). In other words, "a Montgomery-style reduction" is not a mere statement of intended purpose or result; it defines the "cryptographic operation" that is recited in the claim steps that follow. As a result, the preamble in its entirety is limiting. *Id.* at 809 (citing *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1375 (Fed. Cir. 2001) ("A preamble may limit when employed to distinguish a new use of a prior art apparatus or process.")).

The claim term "Montgomery-style reduction" is also indefinite. While a "Montgomery reduction" is a well-known mathematical concept (*see* '286 patent, 1:32-35), the scope of a Montgomery-*style* reduction" is entirely subjective and therefore cannot be defined with reasonable certainty. *See Versata Software, Inc. v. Zoho Corp.*, 213 F. Supp. 3d 829, 836, 838 (2016) (finding the claim term "space-constrained display" indefinite because it depended on subjective opinion without an objective standard). The '286 patent provides examples of computations and mathematical operations that are in the "Montgomery style." *See, e.g.*, '286

6

patent, 4:40-5:35, 6:66-7:2, Figs. 3-4.  But the intrinsic record does not limit a "Montgomery-style reduction" to those examples or otherwise define the term.  Accordingly, to the extent that the preamble is limiting in its entirety, claim 1 of the '286 patent and the claims that depend from it are invalid for indefiniteness because the scope of a "Montgomery-style reduction" cannot be ascertained with reasonable certainty.  *See Saso Golf, Inc. v. Nike, Inc.*, 843 F. App'x 291, 296 (Fed. Cir. 2021) (holding claim term indefinite because a skilled artisan would not know what the bounds of the claim are "and because the patent provides no guidance").

C.    **Claim 1:  "instead of a modulus used in performing a standard Montgomery reduction"**

| Term | Defendants' Construction | Plaintiffs' Construction |
|---|---|---|
| "instead of a modulus used in performing a standard Montgomery reduction" | Indefinite | Plain and ordinary meaning. |

Claim 1 recites a method for performing a cryptographic operation that requires "obtaining an operand," "computing a modified operand" in a specified manner, and "outputting the modified operand."  '286 patent, 9:23-33.  The computing step of that method requires "computing a modified operand using a reduction value, ***instead of a modulus used in performing a standard Montgomery reduction***, to perform a replacement of a least significant word of the operand, rather than perform a cancellation thereof, the reduction value being a function of the modulus."  *Id.* at 9:27-32.

The term "instead of a modulus used in performing a standard Montgomery reduction" (*id.* at 9:27-29) is indefinite because it leaves indiscernibly unclear what activity the claim encompasses.  Must the referred-to modulus be ***actually*** used in performing reduction, and then some other value be computed "instead of" that?  Or does the claim encompass an actor merely ***thinking about*** using the referred-to modulus, and then ***deciding*** to compute some other value

"instead"?  Or something else?  A PHOSITA simply cannot tell, and neither the claim nor the intrinsic record answers this question with reasonable certainty.

The indefiniteness of the "instead of" term is compounded by the fact that it purports to define a method step negatively by identifying what not to do, rather than by stating the actions that must be performed to practice the claim element.  *See, e.g.*, *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371-1373 (Fed. Cir. 2014) (holding a method claim with the phrase "in an unobtrusive manner that does not distract a user" indefinite because it "fails to provide the clarity that the subjective claim language needs").  Again, the term provides no guidance on what actions, if any, must be performed to satisfy this claim requirement.

The phrase "using a reduction value" does not resolve the indefiniteness of this claim limitation.  On the contrary, the claim recites that the "reduction value" is a "function of the modulus," which means that the modulus is used in the claimed computation even though the claim language "instead of a modulus used in performing a standard Montgomery reduction" indicates that it is not.  That inconsistency between how the claim describes the "reduction value" and the "instead of" limitation only exacerbates the indefiniteness problem with this claim element.

Finally, the term "standard Montgomery reduction" is indefinite for the same reasons that "Montgomery-style reduction" is indefinite.  *See supra* Section VII.B.  That is, the bounds of what constitutes a "standard" Montgomery reduction are subjective and therefore not discernable with reasonable certainty.

Taken together, the "instead of" limitation fails to identify what is required by the claimed method step with reasonable certainty, which renders the claim indefinite.

## VI.    THE '039 PATENT

### A.    Technological Background

The '039 patent relates to the performance of a hash algorithm by a computer processor. A hash algorithm converts an input value into a fixed-length output value through a series of mathematical operations. *See, e.g.*, '039 patent, 1:39-44 (describing an example of a hashing algorithm (SHA-512) that uses "80 rounds of repeated operations on a state consisting of eight 64-bit words").

The '039 patent describes rearranging the order of mathematical operations for certain steps in a hashing algorithm, which purportedly reduces the need for the computer to load values from memory in the processor's registers. '039 patent, 3:4-4:63. Specifically, the '039 patent describes dividing the mathematical operations in a hashing algorithm into odd and even iterations. *Id.* at 2:8-19. The odd and even iterations are performed in pairs, where the sequence of computations in the even iteration is reversed. *Id.* at 2:8-15. This permits the processor to perform the odd iteration of the algorithm by reusing values that are already stored in the processor's registers from performing the even iteration without retrieving them from the computer's memory through a load operation. *Id.* at 3:49-4:63. The '039 patent includes an example illustrating how performing the steps of the algorithm in this order may reduce the need to retrieve values from the computer's memory relative to the original order of steps in the algorithm. *Id.* at 3:4-4:63.

The hashing algorithm performs mathematical operations using values of a certain bit-length called "words." *See, e.g.*, '039 patent, 1:40-44 (describing the SHA-512 algorithm as utilizing eight 64-bit words). The '039 patent also explains that "advanced architectures" of certain processors provide features that may facilitate performing the claimed mathematical operations. *See, e.g., id.* at 2:16-20. However, beyond providing examples of certain features that may be enabled by advanced processor architectures, the '039 patent never identifies what an advanced

9

processor architecture is or how it is distinct from other processor architectures. *See, e.g.*, '039 patent, 2:16-20 ("Furthermore, the capabilities of some more advanced architectures such as the ARMv5te are leveraged, including data preloading and doubleword loading/storing by carefully assigning the sate words to the registers."); *id.* at 5:30-34 ("Additionally, the register assignment takes into consideration the possibility of leveraging the capabilities of more advanced processor features, specifically load/store doubleword, i.e., 64-bit word, which is found in ARM architectures starting from ARMv5te.").

The process of performing the iterations of mathematical operations in the hashing algorithm in pairs is reflected in the '039 patent's claims. For example, claim 1 recites:

> A method for maximizing a number of registers at an end of an iteration of a hash algorithm for use in a next iteration, the method comprising:
>
> > categorizing and unrolling iterations of an original secure hash algorithm into even iterations and odd iterations;
> >
> > reversing a sequence of computations in the even iterations to those in the odd iterations, said reversing resulting in an average number of words that need to be loaded into the registers per iteration being reduced by at least one-half compared to the original secure hash algorithm; and
> >
> > combining an even iteration and an odd iteration to provide a new iteration of a loop.

*Id.* at 11:38-49.

**B.    Claim 1:  "A method for maximizing a number of registers at an end of an iteration of a hash algorithm for use in a next iteration"**

| Term | Defendants' Construction | Plaintiffs' Construction |
|---|---|---|
| "A method for maximizing a number of registers at an end of an iteration of a hash algorithm for use in a next iteration" | Preamble is limiting, and indefinite | Preamble is not limiting except as to "a number of registers" |

The parties' dispute for this claim term presents two issues: (1) whether the preamble is limiting in its entirety, or only in part; and (2) if the preamble is limiting in its entirety, whether the term is indefinite.

That parties agree that "a number of registers" is limiting because that is the antecedent basis for "the registers" recited later in the claim. *See* '039 patent, 11:44-46 ("said reversing resulting in an average number of words that need to be loaded into the registers"). The remainder of the preamble is limiting as well because it identifies which registers are the subject of the claim (*i.e.*, the registers "at an end of an iteration of a hash algorithm for use in a next iteration" ('039 patent, 11:38-39)) and the significance of the "number of registers" (*i.e.*, it is "maximiz[ed]" (*id.* at 11:38)). This is a prototypical example of the preamble introducing terms essential to understanding the limitations in the body of the claim. *See Catalina*, 289 F.3d at 808 ("In general, a preamble limits the invention if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." (citation omitted)). Indeed, if Plaintiffs were correct that the only aspect of the preamble that is limiting is "a number of registers," ('039 patent, 11:38) there would be no context for understanding what registers are included in that "number" or the significance of that number.

While the entire preamble is limiting, the "maximizing a number of registers at an end of an iteration of a hash algorithm for use in a next iteration" term renders the claim indefinite. *Id.* at 11:38-39. "Maximizing" (*id.* at 11:38) is a relative term, but the claim does not say what "maximizing" is measured against. The use of a relative term without identifying the necessary comparator makes the claim indefinite. *See Liberty Ammunition, Inc. v. United States*, 835 F.3d 1388, 1396-1398 (Fed. Cir. 2016) ("[C]laims having terms of degree will fail for indefiniteness unless they 'provide objective boundaries for those of skill in the art' when read in light of the

11

specification and the prosecution history." (quoting *Interval Licensing*, 766 F.3d at 1396)). The "maximizing" term further refers to "a number of registers" being maximized with respect to "an iteration," but does not make clear what iteration or iterations are encompassed, despite the '039 patent's reference to several different types of iterations, and the potential involvement of different sets or ranges of iterations. '039 patent, 11:38-39. The specification sheds no light on what the claimed comparison involves. On the contrary, the only discussion of "maximizing" in the patent's specification simply repeats the claim language without providing any clarity as to what is compared in assessing whether a number of registers is maximized. '039 patent, 2:8-11 ("A method, system and computer-usable medium are provided for maximizing the number of registers at the end of an iteration that contain values to be used at the beginning of the following iteration."). That is insufficient to resolve the indefiniteness problem with this claim term. *See Collabo Innovations, Inc. v. Qualcomm Inc.*, No. 6:24-CV-00472-ADA, 2025 WL 3188417, at *17 (W.D. Tex. Oct. 7, 2025) (finding claims indefinite where "specification only uses the words 'operation stop' once, and even then only to mimic the claim language"). Because the '039 patent renders the scope of the "maximizing" limitation unclear, this term is indefinite.

The indefiniteness of this claim term is also manifested by the fact that the "number of registers at an end of an iteration … for use in a next iteration" varies. '039 patent, 11:38-39. It further contradicts or confuses the notion of "maximizing." For example, the number of registers after the first even iteration for use in the next odd iteration is five. '039 patent, at 4:49-58. But that number reduces to three after the odd iteration. *Id*. Are both or either of three or five registers available for the next iteration considered "maximizing?" Neither the claim language nor the specification provides any clarification.

12

### C.    Claim 1:  "said reversing resulting in an average number of words that need to be loaded into the registers per iteration being reduced by at least one half"

| Term | Defendants' Construction | Plaintiffs Construction |
|---|---|---|
| "said reversing resulting in an average number of words that need to be loaded into the registers per iteration being reduced by at least one half" | Indefinite | "said reversing resulting in an average number of words that need to be loaded into the registers per categorized and unrolled iteration being reduced by at least one half" |

This claim term presents a classic case of indefiniteness based upon a claimed comparison that varies depending upon when that comparison is performed.  *See, e.g.*, *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1255 (Fed. Cir. 2008) (claim term is "likely to be indefinite" when applying it to the same composition is "likely to result in differing outcomes (sometimes infringing and sometimes not)").  In particular, this claim term recites that "reversing a sequence of computations in the even iterations to those in the odd iterations" results "in ***an average number of words*** that need to be loaded into the registers per iteration being reduced by at least one half compared to the original secure hash algorithm."  '039 patent, 11:43-47.  Nothing in the claim language defines when that "average number of words that need to be loaded into the registers per iteration" (*id*. at 11:45-46) is calculated—for example, by specifying which iterations or how many iterations of the algorithm are included in calculating that average.  That lack of clarity matters because the "average number of words that need to be loaded into the registers per iteration" (*id*.) changes over time, such that ***same*** algorithm may both fall above and below the claimed threshold of reduction "by at least one half" (*id*. at 11:46-47) in average number of words per iteration depending upon when or where in the algorithmic process that average is calculated.

The '039 patent's specification illustrates the indefiniteness of this claim term.  The '039 patent describes how reversing the even iterations of the well-known SHA-512 algorithm affects

13

the average number words that need to be loaded into the registers per iteration. *See* '039 patent, 3:3-4:63. According to the '039 patent, every iteration of the first 16 iterations of the original SHA-512 algorithm "includes eight 64-bit words A to H" that "require load operations from the stack into the registers to undergo the specified functions." *Id.* at 3:4-9, 3:49-51. When reversing the even iterations of the SHA-512 algorithm, the first iteration (i=0) will require loading all eight words A-H into registers. *Id.* at 4:45-51. After one iteration, the average number of words that need to be loaded into registers per iteration is thus the same as the original SHA-512. *See id.* at 3:50-52 (all eight words A-H loaded in original algorithm); *id.* at 4:45-51 (all eight words A-H loaded in first iteration of algorithm with even iterations reversed). However, as the '039 patent explains, the odd iteration requires loading no words into registers and the average number of words that need to be loaded into registers per iteration after two iterations is half of the original SHA-512 algorithm. *Id.* at 4:60-63 ("The average number of words A-H loaded per original iteration in our new implementation is four (eight 32-bit loads), instead of eight (sixteen 32-bit loads) in the classical implementation.").

The average number of words that need to be loaded per iteration will continue to fluctuate as additional iterations of the algorithm are performed. For example, as the '039 patent explains, the third iteration of the algorithm after reversing the even iterations can reuse words A-C, but will require loading five words D-H into registers. *See* '039 patent, 4:56-58 ("A-C are readily available in registers to be consumed at the beginning of the following even iteration in the same way as in the iteration i=0."); 4:5-39 (pseudocode step 3.7 showing steps 2.4 to 2.15 that require loading words D-H will be repeated in subsequent even iterations). After three iterations, that average number of words that need to be loaded per iteration is 4.33 (13 words ÷ 3 iterations), which is again greater than half of the original SHA-512 algorithm of eight words per iteration.

Claim 1 of the '039 patent does not specify the number of iterations of the algorithm that must be included in calculating the average number of words needed to be loaded in the registers per iteration, and the specification of the '039 patent shows that an average number of words can be calculated based on fewer than all of the iterations of the algorithm. *See* '039 patent, 4:45-63 (calculating an average number of words after two iterations). Because the same algorithm can be both above and below the claimed threshold of "being reduced by at least one-half compared to the original secure hash algorithm" (*id*. at 11:46-47) depending on the number of iterations that are included in the average, the scope of this claim term cannot be ascertained with reasonable certainty. *See Haliburton*, 514 F.3d at 1255.

Plaintiffs' proposed construction adds the words "per categorized and unrolled" to describe the iteration that is the denominator for calculating the claimed average, but that does not resolve the indefiniteness of this claim term. The problem is not identifying the iterations to divide by the number of words that must be loaded, but rather that the calculated average will fluctuate above and below the claimed threshold depending on which iterations are included in the average. The Court should reject Plaintiffs' construction that adds words to the claim and hold the claim term indefinite.

### D.     Claim 3: "advanced processor architecture to leverage capabilities"

| Term | Defendants' Construction | Plaintiffs Construction |
|------|--------------------------|-------------------------|
| "advanced processor architecture to leverage capabilities" | Indefinite | "processor architecture capable of loading/storing at least double words, i.e. 64-bit words, to leverage capabilities" |

This scope of this term from claim 3 of the '039 patent cannot be ascertained with reasonable certainty. '039 patent, 11:54-55. The claim language itself provides no guidance on what constitutes an "advanced processor architecture" or how to distinguish such an architecture

15

from other processor architectures. Indeed, the claim describes the "capabilities" of that "advanced processor architecture" simply as the "capabilities of the advanced processor architecture," which is entirely circular and fails to explain what an advanced processor architecture is or what its capabilities are. '039 patent, 11:53-56.

The '039 patent's specification does not elucidate the boundaries of this claim term. At most, the specification identifies "load/store doubleword, i.e., 64-bit word" as an example of an "advanced processor feature." *See* '039 patent, 5:30-34 ("Additionally, the register assignment takes into consideration the possibility of leveraging the capabilities of more advanced processor features, specifically load/store doubleword, i.e., 64-bit word, which is found in ARM architectures starting from ARMv5te."). Plaintiffs' proposed construction seeks to limit the term "advanced processor architecture" to that example. But that is incorrect for at least two reasons.

***First***, the specification's discussion of a single "advanced processor feature" (*id*. at 5:30-34) does not limit the claimed "advanced processor architecture" (*id*. at 11:54-55) to that example as a matter of disclaimer or lexicography. While "load/store doubleword, i.e., 64-bit word" is undoubtedly an example of an "advanced processor feature," that single example does not define the full scope of this claim term. *See Interval Licensing.*, 766 F.3d at1373 (holding claim indefinite and explaining that a single "e.g." phrase in "a lengthy written description" cannot "serve as the exclusive definition of a facially subjective claim term") (citing *Nautilus*, 572 U.S. at 911 ("disfavoring 'post hoc' efforts to 'ascribe *some* meaning to a patent's claims'" (emphasis in original))).

***Second***, other claims that depend from claim 3 identify additional capabilities of the "advanced processor architecture" (*id*. at 11:54-55) that Plaintiffs' proposed construction omits. For example, claim 5 depends from claim 3 and recites that "the capabilities comprise data

16

preloading and double word loading and storing." '039 patent, 11:59-60. Because claim 5 depends from claim 3, the capabilities of the "advanced processor architecture" (*id*. at 11:54-55) recited in claim 3 must include at least "data preloading" and "double word loading and storing" (*id*. at 11:59-60). Plaintiffs' proposed construction does not capture the full scope of the capabilities that the claimed "advanced processor architecture" must provide.

Because it is not possible to ascertain the scope of the term "advanced processor architecture" (*id*. at 11:54-55) as used in claim 3 of the '039 patent, the claim is invalid for indefiniteness. *See Saso Golf*, 843 F. App'x at 298.

E.    Claim 4:  "ARM type processors"

| Term | Defendants' Construction | Plaintiffs Construction |
|------|--------------------------|-------------------------|
| "ARM type processors" | Indefinite | "processors with ARM architecture" |

Claim 4 of the '039 patent is also invalid for indefiniteness because the '039 patent fails to identify the scope of the term "ARM type processors" with reasonable certainty. '039 patent, 11:58. The claim language identifies no characteristics of an "ARM type processor" or provides any basis on which to distinguish "ARM type processors" from other types of processors. *Id*. The '039 patent's specification does not shed any light on the subject; the term "ARM type processors" appears nowhere except in the patent's claims. *Id*. Claim 4 is also syntactically wrong. An advanced processor architecture cannot "comprise" ARM type processors. The '039 patent's specification makes clear that advanced processor architecture is different from processors as a processor can "conform" to certain architecture. '039 patent, 5:57-64. But an advanced processor architecture refers to the design of a processor, not the processor itself. *Id*. Claim 4 is indefinite for conflating those two distinct concepts.

17

Plaintiffs' proposed construction reinforces the indefiniteness of the term. Plaintiffs propose construing the term as "processors with ARM architecture." But the claim term is not "ARM processor"; it is "ARM *type* processor." '039 patent, 11:58. The fact that Plaintiffs would give no meaning to "type" confirms that a PHOSITA could not determine the scope of the term "ARM type processor" with reasonable certainty. *See Saso Golf*, 843 F. App'x at 298 ("Because an artisan would not already know the bounds of the toe and heel of a golf club, and because the patent provides no guidance, we hold that claim 7 is indefinite.").

F.    Claim 6: "consuming state values residing in the registers at an end of an iteration at a beginning of a following iteration"

| Term | Defendants' Construction | Plaintiffs Construction |
| --- | --- | --- |
| "consuming state values residing in the registers at an end of an iteration at a beginning of a following iteration" | Indefinite | "using state values residing in the registers at an end of an even or odd iteration at a beginning of a following odd or even iteration" |

Claim 6 is a dependent claim that adds the requirement that the method "further compris[es] consuming state values residing in the registers at an end of an iteration at the beginning of a following iteration." '039 patent, 11:61-63. That limitation renders claim 6 indefinite because it fails to identify with reasonable certainty what "a following iteration" is. *Id.* at 11:63. The preamble of claim 1, from which claim 6 ultimately depends, refers to using "registers at an end of an iteration … in a next iteration" of the algorithm. *Id.* at 11:38-39. However, the term "a following iteration" (*Id.* at 11:63) is broader than the next iteration and conceivably includes using state values in non-consecutive iterations of the algorithm (*i.e.*, any iteration that follows after the end of a given iteration).

The '039 patent specification does not clarify what "a following iteration" is. *Id.* The specification discusses using values from the registers in "the following iteration" of the algorithm

18

('039 patent, 2:8-11, 2:26-29), but nowhere uses the broader language of the claim referring to "a following iteration" (*id*. at 11:63). The specification therefore does not resolve the ambiguity about which iteration of the algorithm uses the state values stored in the registers.

Plaintiffs' proposed claim construction does not solve the indefiniteness problem with this term either. Plaintiffs' proposal simply repeats the claim language of "a following … iteration" and does not specify which of the following iterations utilize the state values residing in the registers.

The claim term is also indefinite due to the double use of the preposition "at," making the claim term grammatically indecipherable. For example, "at an end of an iteration" could refer to "consuming" or it could refer to "values residing in the registers." *Id*. at 11:61-6. The phrase "at a beginning of a following iteration" could similarly refer to "consuming" or "values residing in the registers" or could just be a simultaneous inconsistent use of "at." *Id*.

Because "a following iteration" does not specify with reasonable certainty which iteration utilizes the state values residing in the registers, the Court should find this term indefinite. *See Media Rights Technologies, Inc. v. Capital One Financial Corp.*, 800 F.3d 1366 (Fed. Cir. 2015) (explaining "a claim is indefinite if its language 'might mean several different things and no informed and confident choice is available among the contenting definitions'" (citation omitted)).

## VII. CONCLUSION

Defendants respectfully request that the Court construe the preambles of the independent claims of the '286 and '039 patents as limiting in their entirety and hold that the asserted claims of the '286 and '039 patents are invalid for indefiniteness.

Dated: June 30, 2026

Respectfully submitted,

/s/ Andrew J. Danford
John V. Hobgood (*pro hac vice*)

19

Andrew J. Danford (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND
  DORR LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000
john.hobgood@wilmerhale.com
andrew.danford@wilmerhale.com

Benjamin S. Fernandez (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND
  DORR LLP
1225 17th Street, Suite 2600
Denver, Colorado 80202
(720) 274-3163
ben.fernandez@wilmerhale.com

Laura E. Powell (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND
  DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6294
laura.powell@wilmerhale.com

Melissa R. Smith
Texas State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Tel:  (903) 934-8450
melissa@gillamsmithlaw.com

*Attorneys for Defendant Cipher Digital Inc.*

/s/  Justin S. Cohen
Justin S. Cohen
State Bar No. 24078356
  justin.cohen@hklaw.com
Robert S. Hill
State Bar No. 276056
  robert.hill@hklaw.com
Morgan Delabar
State Bar No. 24116625
  morgan.delabar@hklaw.com
**Holland & Knight LLP**
One Arts Plaza

20

1722 Routh Street, Suite 1500
Dallas, Texas 75201
214.969.1700
214.969.1751 (fax)

Amy Simpson (*admitted pro hac vice*)
CA State Bar No. 241090
  amy.simpson@hklaw.com
**Holland & Knight LLP**
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA  90067
310.201.8900

Deron R. Dacus
State Bar No. 00790553
ddacus@dacusfirm.com
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suire 430
Tyler, Texas 75701
903.705.1117

*Attorneys for Defendants*
*Foundry Digital LLC,*
*Fortitude Mining, LLC, and*
*Riot Platforms, Inc.*

21

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all counsel of record via the

Court's ECF system on June 30, 2026.

/s/ *Andrew J. Danford*
Andrew J. Danford