IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | |
|---|---|
| MALIKIE INNOVATIONS LTD.,<br>KEY PATENT INNOVATIONS LTD.<br><br>     Plaintiffs,<br><br>  v.<br><br>FOUNDRY DIGITAL LLC; FORTITUDE<br>MINING, LLC; RIOT PLATFORMS, INC.;<br>AND CIPHER DIGITAL INC. F/K/A/<br>CIPHER MINING INC.,<br><br>    Defendants. | CASE NO. 7:25-CV-00567-DC-DTG<br><br>JURY TRIAL DEMANDED |

**PLAINTIFFS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ......................................................................................................... 1

II. ARGUMENT ............................................................................................................... 2

    A. The '286 Patent ................................................................................................... 2

        1. "A method for performing, on a cryptographic apparatus, a Montgomery-style reduction in a cryptographic operation" (claim 1; preamble) ................................ 3

        2. "instead of a modulus used in performing a standard Montgomery reduction" (claim 1) ........................................................................................................... 6

    B. The '039 Patent ................................................................................................... 8

        1. "A method for maximizing a number of registers at an end of an iteration of a hash algorithm for use in a next iteration." (claim 1; preamble) ........................... 9

        2. "said reversing resulting in an average number of words that need to be loaded into the registers per iteration being reduced by at least one half" (claim 1) ....... 12

            a. The patent gives examples of "reversing a sequence of computations" which "result[s] in an average number of words that need to be loaded … per iteration" being reduced by "at least one-half" ........................................... 13

            b. Defendants misapply the claim language and the patent's teachings .......... 15

        3. "advanced processor architecture to leverage capabilities" (claim 3) .................. 16

        4. "ARM type processors" (claim 4) ....................................................................... 18

        5. "consuming state values residing in the registers at an end of an iteration at a beginning of a following iteration" (claim 6) ....................................................... 19

III. CONCLUSION ........................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Med. Sys., Inc.v. Biolitec, Inc.*,
618 F.3d 1354 (Fed. Cir. 2010)................................................................................4

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
314 F.3d 1313 (Fed. Cir. 2003)................................................................................7

*Arctic Cat Inc. v. GEP Power Prods., Inc.*,
919 F.3d 1320 (Fed. Cir. 2019)..................................................................3, 4, 9, 10

*Astrazeneca AB, Aktiebolaget Hassle, KBI-E, Inc. v. Mut. Pharm. Co.*,
384 F.3d 1333 (Fed. Cir. 2004)..............................................................................17

*Atlas Global Techs. LLC v. OnePlus Tech. (Shenzen) Co., Ltd.*,
6:21-cv-01217-ADA, Dkt. 74 (W.D. Tex. Mar. 22, 2023).....................................11

*Barrette Outdoor Living, Inc. v. Fortress Iron, LP*,
156 F.4th 1353 (Fed. Cir. 2025) ...........................................................................5, 8

*BASF Corp. v. Johnson Matthey Inc.*,
875 F.3d 1360 (Fed. Cir. 2017)..............................................................................20

*Bristol-Myers Squibb Co. v. Ben Venue Lab'ys., Inc.*,
246 F.3d 1368 (Fed. Cir. 2001)................................................................................5

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
289 F.3d 801 (Fed. Cir. 2002)......................................................................3, 4, 10

*ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*,
35 F.4th 1345 (Fed. Cir. 2022) ..............................................................................20

*Edwards Lifesciences LLC v. Cook Inc.*,
582 F.3d 1322 (Fed. Cir. 2009)..............................................................................18

*Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*,
881 F.3d 1354 (Fed. Cir. 2018)...........................................................................7, 11

*Gaddis v. United States*,
381 F.3d 444 (5th Cir. 2004) (Smith J., dissenting) .............................................17

*Guangdong Alison Hi-Tech Co. v. Int'l Trade Comm'n*,
936 F.3d 1353 (Fed. Cir. 2019)........................................................................12, 17

*Halliburton Energy Servs., Inc. v. M-I LLC,*
514 F.3d 1244 (Fed. Cir. 2008)............................................................................................16

*IMS Tech., Inc. v. Haas Automation, Inc.,*
206 F.3d 1422 (Fed. Cir. 2000)............................................................................................10

*Interval Licensing LLC v. AOL, Inc.,*
766 F.3d 1364 (Fed. Cir. 2014)........................................................................................7, 17

*Intirtool, Ltd. v. Texar Corp.,*
369 F.3d 1289 (Fed. Cir. 2004)........................................................................................4, 10

*Kaneka Corp. v. Xiamen Kingdomway Grp. Co.,*
790 F.3d 1298 (Fed. Cir. 2015)............................................................................................16

*Kouri v. Fed. Express Corp.,*
No. 2:21-CV-08066-SPG-JEM, 2023 WL 3431288 (C.D. Cal. Jan. 13, 2023) ......................17

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
358 F.3d 898 (Fed. Cir. 2004)........................................................................................17, 18

*Malikie Innovations Ltd. et al. v. MARA Holdings, Inc. et al.,*
7:25-cv-00222-DC-DTG......................................................................................................4

*Malikie Innovations Ltd. et al. v. Mara Holdings, Inc.,*
No. 7:25-cv-00222-DC-DTG, Dkt. 80 (W.D. Tex. Mar. 12, 2026) ........................................1

*Mallinckrodt, Inc. v. Masimo Corp.,*
147 F. App'x 158 (Fed. Cir. 2005) .....................................................................................6, 11

*Nautilus, Inc. v. Biosig Instruments, Inc.,*
572 U.S. 898 (2014)....................................................................................................5, 8, 11

*Nimbelink Corp. v. Digi Int'l Inc.,*
No. 2024-2292, 2026 WL 492037 (Fed. Cir. Feb. 23, 2026) ...............................................3, 4

*Phillips v. AWH Corp.,*
415 F.3d 1303 (Fed. Cir. 2005)............................................................................................12

*Pickholtz v. Rainbow Techs., Inc.,*
284 F.3d 1365 (Fed. Cir. 2002)........................................................................................18, 19

*Sonix Tech. Co. v. Publications Int'l, Ltd.,*
844 F.3d 1370 (Fed. Cir. 2017)............................................................................................8

*Source Search Techs., LLC v. LendingTree, LLC,*
588 F.3d 1063 (Fed. Cir. 2009)........................................................................................6, 11

*Textron Innovations Inc. v. Am. Eurocopter Corp.*,
   498 F. App'x 23 (Fed. Cir. 2012) .......................................................................11

*Tf3 Ltd. v. Tre Milano, LLC*,
   894 F.3d 1366 (Fed. Cir. 2018)............................................................................17

*TomTom, Inc. v. Adolph*,
   790 F.3d 1315 (Fed. Cir. 2015)........................................................................9, 10

*Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*,
   853 F.3d 1272 (Fed. Cir. 2017)........................................................................7, 11

## I.    INTRODUCTION

Plaintiffs Malikie Innovations Ltd. and Key Patent Innovations Ltd. ("Plaintiffs") submit this Responsive Claim Construction Brief regarding disputed terms in U.S. Patent Nos. 8,532,286 ("'286 Patent or '286 Pat.")[1] and 8,712,039 ("'039 Patent or '039 Pat."). There are no disputes as to U.S. Patent Nos. 8,788,827, 8,806,197 or 8,666,062. These five patents are collectively referred to as the Asserted Patents.

The Asserted Patents relate to innovations in the field of cryptography. Their inventors were technologists at Certicom Corporation and BlackBerry Limited (which acquired Certicom). Certicom was a pioneer in elliptic curve cryptography (ECC), a way of performing public key cryptography as an alternative to the older and less secure RSA technique. Certicom received numerous patents for its innovations in this field, including the Asserted Patents.

The '286 Patent relates to ways of performing Montgomery style reduction (an operation used in cryptographic operations) that reduce computer processing and storage requirements. Ex. A ¶¶ 56-59. The '039 Patent relates to improved implementations of hash algorithms on a computer's processors, specifically on how a processor's registers are used more efficiently. *Id.*

Plaintiffs' proposed construction for each term at issue reflects that term's plain and ordinary meaning, as a person of ordinary skill in the art (POSITA)[2] would have understood it at the time of each invention, in view of the respective patent's disclosure and prosecution history.

Defendants take a position of "indefiniteness" with respect to every disputed term. This

---

[1] The Court construed certain terms of the '286 Patent in *Malikie Innovations Ltd. et al. v. Mara Holdings, Inc.*, No. 7:25-cv-00222-DC-DTG, Dkt. 80 (W.D. Tex. Mar. 12, 2026) ("MARA Case").

[2] Plaintiffs' expert, Dr. Paul Martin, opines that a POSITA would have possessed (1) a bachelor's degree in computer science, mathematics, applied mathematics, or a related field, and two or more years of experience in applied cryptography or computer security software engineering, or (2) an advanced degree in computer science or a related field and one or more years of experience in applied cryptography or computer security software engineering. Ex. A ¶ 41.

1

means Defendants must prove, by clear and convincing evidence, that the claims are invalid as indefinite. But they fail to carry this heavy burden, offering no evidence from a POSITA's point of view—resting only on attorney argument. As detailed below, a POSITA would have understood the scope of each claim with reasonable certainty.

## II.    ARGUMENT

### A.    The '286 Patent

The '286 patent (Ex. B) is entitled "System and Method for Reducing the Computation and Storage Requirements for a Montgomery-Style Reduction" and relates generally to "an alternative way in which to produce a Montgomery reduction." '286 Pat., Title; Abstract; Ex. A ¶¶56-59.

In public key cryptography, certain operations use modular arithmetic, including modular reduction. '286 Pat., 1:20-30. "For example, to multiply two numbers modulo some [modulus] n, the classical approach is to first perform the multiplication and then calculate the remainder."[3] *Id.* Calculating the remainder is referred to as "reduction," and is considered to be a slow process. *Id.* One well known method for modular reduction is "Montgomery reduction." *Id.* at 1:31-35.

Conventional Montgomery reduction reduces a value "a" using a Montgomery radix "R" to calculate $aR^{-1}$ mod n. *Id.* at 1:47-64. A precomputed value "μ" is used to calculate a multiplier "m=μa mod $2^w$." A multiple of the modulus "n" (*i.e.*, m×n) is then added to "a" (*i.e.*, a+m×n) to "zero" out the least significant word (LSW) of "a," and the result is "shifted down" to eliminate that LSW. *Id.* at 2:47-61, 5:4-17. Adding the multiple of the modulus to "a" to eliminate its least significant word "cancels" it. *Id.* Repeating this process effects the reduction $aR^{-1}$ mod n. *Id.* The values μ and n are stored in registers throughout this process. *Id.*

---

[3] The "modulo" operation calculates the remainder of dividing one number by another called the "modulus." Ex. A ¶ 57. For example, 14 mod 12 = 2 (*i.e.*, 14 ÷ 12 = 1 remainder 2).

The '286 Patent teaches the use of "a modified reduction value" that "can be used in place of μ and n." *Id*. at 5:28-36.  Replacement using the modified reduction value obviates multiplying "a" by μ and determining m.  *Id*.  "This … avoids both the multiplication necessary to compute m and the storage required for μ."  *Id*. at 6:2-9.  It also avoids the need to store the modulus n.  *Id*.

1.  **"A method for performing, on a cryptographic apparatus, a Montgomery-style reduction in a cryptographic operation" (claim 1; preamble)**

| Defendants' Construction | Plaintiffs' Construction |
| --- | --- |
| Preamble is limiting, and indefinite | The full preamble is not limiting and is not indefinite. |

The full preamble of claim 1 is not limiting.[4]  "[A]s a general rule preamble language is not treated as limiting."  *Arctic Cat Inc. v. GEP Power Prods., Inc*., 919 F.3d 1320, 1327 (Fed. Cir. 2019).  A preamble may limit an invention only "if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim."  *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002).  Factors relevant to determining whether a preamble term is limiting include whether it (1) provides antecedent basis; (2) supplies necessary structure; and (3) was relied on during prosecution to distinguish prior art.  *Arctic Cat*, 919 F.3d at 1329 (citing *Catalina*, 289 F.3d at 808).

The dispute centers on the part of the preamble that reads, "a Montgomery-style reduction" and concerns whether that term is limiting, and if so, whether it is indefinite.[5]  This is the same

---

[4] The parties agree that the terms "a cryptographic apparatus" and "a cryptographic operation" are limiting because they serve as antecedent basis for language in the body of the claim.  The remaining portions of the preamble are not limiting for the reasons set forth here. *Nimbelink Corp. v. Digi Int'l Inc.*, No. 2024-2292, 2026 WL 492037, at *2-3 (Fed. Cir. Feb. 23, 2026) ("A preamble that is limiting in part does not transform nearby descriptive words in the preamble into claim limitations." (citing *TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1323 (Fed. Cir. 2015)).

[5] Defendants' indefiniteness argument is based only on the "Montgomery-style reduction" term. Dkt. 100 at 6-7.

dispute that was before this Court in *Malikie Innovations Ltd. et al. v. MARA Holdings, Inc. et al.*, 7:25-cv-00222-DC-DTG ("MARA"). The Court held the term not limiting. *Id.*, Dkt. 80 (Ex. I) at 15-17. The analysis in MARA applies equally here and should result in the same determination— that the preamble term "Montgomery-style reduction" is not limiting (which moots any question of indefiniteness). Here, as there, none of the *Arctic Cat* factors are present.

The term "Montgomery-style reduction" appears only in the preamble and does not provide antecedent basis to any term. It merely describes "the purpose or intended use" of the invention embodied by the claimed steps, which together recite "a structurally complete invention." *Catalina*, 289 F.3d at 808; *Nimbelink*, 2026 WL 492037 at *3 ("[T]he claims themselves, by virtue of their recited elements, already embody [the preamble term] without relying on the preamble to add another structural limitation."); Ex. A ¶¶ 60-62. Also, "Montgomery-style reduction" was not relied on during prosecution to distinguish any prior art. *See* Ex. J ('286 file history excerpt) at 00161-62, 00192-94; *Intirtool, Ltd. v. Texar Corp.*, 369 F.3d 1289, 1295 (Fed. Cir. 2004).

*Arctic Cat* is instructive. There, the Federal Circuit found "personal recreational vehicle" non-limiting because it did not meet any of the requisite factors, in spite of the fact that the specification emphasized the vehicle's importance. 919 F.3d at 1323, 1329. So too here: the preamble provides no antecedent basis, necessary structure, or distinction during prosecution, and the claimed novelty is in the body, not the preamble. *Id.* at 1329-30.

Defendants contend "Montgomery-style reduction" is "structural" because it supposedly "identifies" the "cryptographic operation" recited in the claim. Dkt. 100 at 6. There is no evidence to support that assertion, and Defendants identify nothing missing from claim 1. *Am. Med. Sys., Inc.v. Biolitec, Inc.*, 618 F.3d 1354, 1360 (Fed. Cir. 2010). And this Court has already held that "Montgomery-style reduction" does not help a POSITA understand the body of the claim. Ex. I

4

at 16-17.  Defendants' reliance on *Bristol-Myers Squibb Co. v. Ben Venue Lab'ys., Inc.,* 246 F.3d 1368, 1375 (Fed. Cir. 2001), is misplaced, as the intrinsic record makes clear that the invention is to a "modified" or "alternative" way of performing Montgomery-style reduction, not a new use of the prior art way of doing so.  Ex. A ¶¶63-67;'286 Pat., 3:27-45.

Even if the Court were to find the preamble limiting, "Montgomery-style reduction" is not indefinite because, as Plaintiffs' expert, Dr. Martin, explains, a POSITA would have understood the scope of the term with reasonable certainty.  Ex. A ¶ 67.  The claimed "Montgomery-style reduction" is a modified or alternative way of performing reduction that differs from and improves upon the standard or "typical" method.  '286 Pat., 3:27-45, 5:24-6:19; Ex. A ¶ 67. "[T]ypical Montgomery-style reduction requires storing both $\mu$ and n [the modulus] in registers," but "[t]o avoid having to store both $\mu$ and n, it has been recognized by the inventor that a ***modified reduction value*** … can be used in place of $\mu$ and n." *Id.*, 5:24-35 (emphasis added). The patent teaches using an inventive "modified reduction value" (*e.g.*, n'), instead of (*i.e.*, as a "replacement for") the modulus (*e.g.*, n) used in performing a standard Montgomery reduction, to perform a replacement of a least significant word of the operand (*e.g.*, $a_0$), rather than a cancellation thereof (as was also done in standard Montgomery reduction), *id.*, 5:36-6:19, 5:67-6:2.  The specification thus contains sufficient disclosure for a POSITA to understand what "Montgomery-style reduction" means within the context of the claim.  Ex. A ¶ 67; *Barrette Outdoor Living, Inc. v. Fortress Iron, LP*, 156 F.4th 1353, 1367 (Fed. Cir. 2025) (specification examples provided "sufficient guidance").

Defendants' contention that "'Montgomery-*style* reduction' is entirely subjective" rests solely on attorney argument.  Dkt. 100 at 6.  Defendants provide no evidence from the viewpoint *of a POSITA*.  This is not enough.  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 908 (2014) ("[D]efiniteness is to be evaluated from the perspective of someone skilled in the relevant

5

art."); *see also Source Search Techs., LLC v. LendingTree, LLC*, 588 F.3d 1063, 1076 (Fed. Cir. 2009) (rejecting "conclusory statements and bald assertions" of indefiniteness); *Mallinckrodt, Inc. v. Masimo Corp.*, 147 F. App'x 158, 179 (Fed. Cir. 2005) (rejecting indefiniteness challenge based "entirely on attorney argument"). The patent's examples of Montgomery-style reduction ('286 Pat., 2:47-53, 4:40-6:19), supported by Dr. Martin's declaration, demonstrate that it is not subjective to a POSITA.  Ex. A ¶ 68.

### 2. "instead of a modulus used in performing a standard Montgomery reduction" (claim 1)

| Defendants' Construction | Plaintiffs' Construction |
|---|---|
| Indefinite. | Plain and ordinary meaning. |

This phrase is not indefinite.  The full claim element recites:

> computing a modified operand using a reduction value, ***instead of a modulus used in performing a standard Montgomery reduction***, to perform a replacement of a least significant word of the operand, rather than perform a cancellation thereof, the reduction value being a function of the modulus

'286 Pat., claim 1.  By its plain language, this element requires "computing a modified operand using a reduction value … to perform a replacement of a least significant word of the operand."  It also requires the reduction value to be used "***instead of a modulus*** used in performing a standard Montgomery reduction," but at the same time, "a ***function of the modulus***."  In this context, a POSITA would readily understand that using a reduction value, "instead of a modulus used in performing a standard Montgomery reduction," means that the reduction value, while it is a function of the modulus (per the final clause), is not itself the modulus.  Ex. A ¶¶ 69-70.

This plain and ordinary understanding is consistent with the specification which teaches "n" is the modulus used in performing a standard Montgomery reduction. '286 Pat., 1:47-49, 2:47-53; Ex. A ¶ 71.  In standard or "typical" Montgomery reduction, an operand ("a"), a multiplier ("m") based on a precomputed value ("μ"), and the modulus ("n") are used to compute a+m×n as

6

part of the reduction process. '286 Pat., 2:47-51, 4:40-47, 4:65-5:17, 5:24-31; Ex. A ¶ 71. In the invention's "alternative way" of producing a Montgomery reduction, a "modified operand" (*e.g.*, n') is used "in place of μ and n," *i.e.*, as a "replacement for the values μ and n used in the Montgomery reduction method." *Id*. at 3:27-45, 5:31-6:19. The specification also teaches that the modified reduction value is a function of the modulus (*e.g.*, $n'=2^{-w}$ mod n). '286 Pat., 5:45-49, 5:67-6:2. Ex. A ¶ 71. The specification thus teaches that the reduction value, while it is a function of the modulus, is not itself the modulus. Ex. A ¶ 71.

Defendants cannot meet their burden of proving this term indefinite. First, there is no evidence that a POSITA would not have understood the term with reasonable certainty because Defendants provide none. *Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1284-85 (Fed. Cir. 2017) (affirming acceptance of expert testimony over "bare attorney argument" on issue viewed from a POSITA's perspective); *Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*, 881 F.3d 1354, 1359 (Fed. Cir. 2018) (attorney argument not evidence of a POSITA's understanding). Nor is the term indefinite because it "define[s] a method step negatively by identifying what not to do." Dkt. 100 at 8; Ex. A ¶72. Negative limitations are not per se indefinite. *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1329 (Fed. Cir. 2003) (acknowledging that "patentees can use negative limitations"). Defendants' reliance on *Interval Licensing LLC v. AOL, Inc.* does not rescue them—the problem with the phrase at issue there was not that it was a negative limitation, but rather that it (unlike the term here) was "highly subjective" and "depend[ed] on the preferences of the particular [person]." 766 F.3d 1364, 1371 (Fed. Cir. 2014).

There is also no "inconsistency" in requiring the reduction value to be used "instead of a modulus" and "a function of the modulus." *Contra* Dkt. 100 at 8. A POSITA would have understood these requirements in proper context to mean that the reduction value, while it is a

function of the modulus, is not itself the modulus. *See supra*; Ex. A ¶¶ 71-72. Again, Defendants offer no evidence to support their (incorrect) interpretation—just attorney argument.

Finally, Defendants' fail to show that "standard Montgomery reduction" is indefinite. Dkt. 100 at 8. Defendants label the term "subjective"—based on attorney say-so—but provide nothing to support the contention that it is subjective to a POSITA. *Nautilus*, 572 U.S. 898 at 908. The specification provides examples of standard Montgomery reduction, where an operand (a), a multiplier (m), and the modulus (n) are used to compute a+m×n to cancel the LSW of the operand. *Id*. at 1:31-64, 2:47-51, 4:40-47, 4:65-5:10; Ex. A ¶ 73. These examples are sufficient for a POSITA to ascertain the claim scope with reasonable certainty. Ex. A ¶ 73; *Barrette*, 156 F.4th at 1367; *Sonix Tech. Co. v. Publications Int'l, Ltd.*, 844 F.3d 1370, 1378-80 (Fed. Cir. 2017).

## B.    The '039 Patent

The '039 Patent (Ex. C) relates to improved techniques for implementing hash algorithms on computer processors to, for example, increase the reuse of register values and thereby reduce time-consuming load operations. '039 Pat., Title; Abstract; 1:53-54, 3:49-58, 4:45-63; Ex. A ¶¶ 74-75. The patent teaches that implementing hash algorithms (such as secure hash algorithms in the SHA-2 family) on a computer processor involves an iterative process of loading state values from memory into registers, operating on them, and returning them to memory. '039 Pat., 1:39-54. Each "iteration" or "round" of the hash algorithm (*e.g.*, SHA-512 includes 80 iterations) includes a number of state values (*e.g.*, A-H) that are either computed anew or reused as "a shifted copy from the previous state (i.e., old A becomes B, B becomes C, etc.)." *Id*., 3:4-21. Conventionally, the reused state values were stored in memory, requiring load operations to get them from memory back into the registers for use in the next iteration. *Id*., 3:18-21, 3:49-51. The patent teaches that optimizing register utilization and minimizing "lengthy" load operations is a challenge, especially when fewer registers are available. *Id*., 1:44-54.

8

The patent solves the problem through an improved technique that includes categorizing and unrolling the original iterations into even iterations and odd iterations, and reversing the sequence of computations between those even and odd iterations. *Id.*, 3:51-58, 4:45-63. This allows the processor to reuse values from the previous odd or even iteration that are already in the processor's registers without having to retrieve them from memory through a load operation. *Id.*

> **1. "A method for maximizing a number of registers at an end of an iteration of a hash algorithm for use in a next iteration." (claim 1; preamble)**

| Defendants' Construction | Plaintiffs' Construction |
|---|---|
| Preamble is limiting, and indefinite | The full preamble is not limiting and not indefinite. |

The full preamble is not limiting. Claim 1 recites:

**1.** *A method for maximizing a number of registers at an end of an iteration of a hash algorithm for use in a next iteration*, the method comprising:

categorizing and unrolling iterations of an original secure hash algorithm into even iterations and odd iterations;

reversing a sequence of computations in the even iterations to those in the odd iterations, said reversing resulting in an average number of words that need to be loaded into the registers per iteration being reduced by at least one-half compared to the original secure hash algorithm; and

combining an even iteration and an odd iteration to provide a new iteration of a loop.

The parties agree "a number of registers" provides antecedent basis and is limiting. But the rest of the preamble ("the maximizing language") does not meet any of the *Arctic Cat* factors and is not limiting because it merely states the purpose of the invention. *TomTom*, 790 F.3d at 1323 (part of preamble stating intended use not limiting despite other parts found limiting); Ex. A ¶¶ 76-79.

*TomTom* is particularly analogous here. The preamble recited "*[a] method for generating and updating data for use in* a destination tracking system of at least one mobile unit comprising." *Id.* at 1322 (emphasis added). Although the phrase "destination tracking system of at least one mobile unit" was limiting, the Court held that "does not necessarily convert the entire preamble into a limitation, particularly one that only states the intended use of the invention." *Id.* at 1323.

9

In finding the rest of the preamble ("the generating language") not limiting, the Court found it "does not provide an antecedent basis for any of the claims" and only "stat[es] a purpose or intended use." *Id*. at 1324. The Court further found that it "does not recite essential structure or steps," and that the claimed invention "is structurally complete without [it]." *Id*.

So too here. While the parties agree a part of the preamble is limiting ("a number of registers"), the remaining "maximizing language" provides no antecedent basis and merely states the intended use of the invention. *Id*. at 1323-24. The specification confirms this. Ex. A ¶¶ 80-81. The stated *purpose* of the invention is "***maximizing*** the number of registers at the end of an iteration that contain values to be used at the beginning of the following iteration," and that purpose "is achieved by categorizing the [hash] algorithm iterations into even and odd iterations, where the sequence of computation in the even iteration is reversed in the odd iteration." '039 Pat., 2:8-20; *see id.*, Abstract; 3:51-58. Using similar language, claim 1's preamble recites that purpose while the body recites how it is achieved. The body of claim 1 is also structurally complete—it recites the invention's essential steps of categorizing and unrolling iterations into even and odd iterations, reversing a sequence of computations in the even iterations to those in the odd iterations, and combining an even and odd iteration. Ex. A ¶¶ 78-81. The maximizing language carries no weight—it recites no essential structure or step not already found in the body and "merely gives a descriptive name to the set of limitations in the body of the claim that completely set forth the invention," *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1434 (Fed. Cir. 2000); Ex. A ¶¶ 78-81. The preamble was also not relied on during prosecution to distinguish the invention from prior art. Ex. K ('039 file history excerpt) at 000588-91; *Arctic Cat*, 919 F.3d at 1329; *Catalina*, 289 F.3d at 808; *Intirtool*, 369 F.3d at 1295.

10

Defendants offer no evidence in support of their claim that "maximizing" adds "significance" and is "essential" to understanding the body.  Moreover, "at an end of an iteration of a hash algorithm for use in a next iteration" is simply "a general description of the context in which the 'improvement' recited in the body of the claim is situated." *Textron Innovations Inc. v. Am. Eurocopter Corp.*, 498 F. App'x 23, 28 (Fed. Cir. 2012).  In other words, the body recites what is needed for achieving the invention's purpose, making it structurally complete without need of the preamble.  *Id*.; Ex. A ¶¶ 78-81.

If the Court were to find the whole preamble limiting (it should not), the only portion of it that Defendants claim is indefinite is the word "maximizing."  Dkt. 100 at 11-12.  But Defendants' position relies solely on attorney argument—there is no evidence that a POSITA would have been unable to understand the claim with reasonable certainty.  *Nautilus*, 572 U.S. at 908.[6]  Plaintiffs' expert, Dr. Martin, explains that a POSITA would have understood "maximizing" to mean what occurs from performing the steps recited in the body of the claim.  Ex. A ¶ 81.  The '039 Patent teaches "[a] method … for maximizing the number of registers at the end of an iteration that contain values to be used at the beginning of the following iteration."  '039 Pat., 2:8-11.  It then plainly indicates that "***This***," *i.e.*, the maximizing, "***is achieved by*** categorizing the [hash] algorithm iterations into even and odd iterations, where the sequence of computation in the even iteration is reversed in the odd iteration.  Hence an even and an odd iteration form together a new iteration of the loop."  *Id*. at 2:11-16; *see id*. at 3:51-58 (similar).  Defendants ignore this context, Dkt. 100 at 12 (citing 2:8-11 but omitting 2:11-16), which expressly indicates that "maximizing"

---

[6] Defendants' attorney argument is insufficient.  *See Source Search*, 588 F.3d at 1076; *Mallinckrodt*, 147 F. App'x at 179; *Atlas Global Techs. LLC v. OnePlus Tech. (Shenzen) Co., Ltd.*, 6:21-cv-01217-ADA, Dkt. 74 at 18 (W.D. Tex. Mar. 22, 2023); *Wasica*, 853 F.3d at 1284-85; *Elbit*, 881 F.3d at 1359.

is achieved by performing the similarly phrased steps of claim 1.  Ex. A ¶ 81.  This provides

"objective boundaries for those of skill in the art."  *Guangdong Alison Hi-Tech Co. v. Int'l Trade*

*Comm'n*, 936 F.3d 1353, 1360 (Fed. Cir. 2019) (term not indefinite where specification provided

express definitions); Ex. A ¶ 81.  It also confirms that the preamble provides a mere descriptive

name for the invention recited in the claim body, thus it is not limiting. *See supra*; Ex. A ¶ 81.

Defendants' argument based on fluctuations in the number of registers at the end of each

iteration misunderstands what "maximizing" means.  That the number of registers vary from

iteration to iteration does not alter the fact that "maximizing" is achieved by performing the steps

of claim 1 (*see supra*).  '039 Pat., 4:49-63; Ex. A ¶ 82.  Defendants' unexplained (but apparently

differing) "notion of 'maximizing'" is not controlling.  *Phillips v. AWH Corp.*, 415 F.3d 1303,

1316 (Fed. Cir. 2005) ("[T]he inventor's lexicography governs.").

2. **"said reversing resulting in an average number of words that need to be loaded into the registers per iteration being reduced by at least one half" (claim 1)**

| Defendants' Construction | Plaintiffs' Construction |
|---|---|
| Indefinite | "said reversing resulting in an average number of words that need to be loaded into the registers per categorized and unrolled iteration being reduced by at least one half" |

Defendants do not dispute Plaintiffs' proposed construction of "per iteration" to mean "per

*categorized and unrolled* iteration" – the rest of the term tracks the original claim language.  *See*

Dkt. 100 at 15.  The dispute lies in whether this full phrase is sufficiently definite such that a

POSITA would have been able to reasonably ascertain its scope.  The record shows it is.

The full claim element provides important context (disputed portion in red italics):

reversing a sequence of computations in the even iterations to those in the odd iterations, *said reversing resulting in an average number of words that need to be loaded into the registers per iteration being reduced by at least one-half* compared to the original secure hash algorithm

'039 Pat., claim 1. By its plain language, "reversing a sequence of computations" of even and odd iterations is the event that "result[s] in" the average number of words that need to be loaded being reduced by at least one-half – *i.e.*, load reduction happens *after* reversing happens. A POSITA would therefore understand that the "average number of words that need to be loaded … per iteration" is the average number of words loaded as a result of (*i.e.*, caused by) reversing the sequence of computations within an iteration, from one iteration to the next. Ex. A ¶ 84.

> a. *The patent gives examples of "reversing a sequence of computations" which "result[s] in an average number of words that need to be loaded … per iteration" being reduced by "at least one-half"*

The patent illustrates how "the number of load instructions required" is minimized by "reusing values from the previous iteration." '039 Pat., 3:52-58. It teaches that "[t]his is achieved by categorizing, and unrolling, the algorithm iterations into even and odd ones, where the sequence of computation in the even iteration is reversed in the following odd iteration." *Id.* An example is detailed in "Pseudocode 2" and the related description. *Id.* at 4:45-63; Ex. A ¶¶ 85-86.

A first iteration (i=0, an "even iteration") loads eight words (A-H): A-C are loaded first, value "t" is computed, D-H are loaded next, and then value "u" is computed. *Id.*, 4:45-51; Ex. A ¶ 87. Because i=0 is the first iteration, it precedes any "reversing" step (*i.e.*, the sequence of computing "t" first then "u" is the first time these computations happen; they are not a "reverse" of any prior sequence). Ex. A ¶ 87. The second iteration (i=1) (an "odd iteration") reuses "E-H and A" from the prior iteration (*i.e.*, they do not need to be loaded) and are used to calculate "u" first. '039 Pat., 4:51-54; Ex. A ¶ 87. Only three words B-D need to be loaded, which are then used to calculate "t." '039 Pat., 49-54; Ex. A ¶ 87. The sequence of computations for i=1 ("u" first, then "t") is the **reverse** of the previous i=0 iteration ("t" first, then "u"). Next, "at the end of this odd iteration, the values H, A, and B, which are renamed A-C, are readily available in registers to be consumed at the beginning of the following even iteration in the same way as in the iteration i=0."

13

'039 Pat., 4:54-58. In other words, the next iteration (i=2) reuses three words from the previous iteration (A-C) to compute "t" and loads five words (D-H) to compute "u," reversing the sequence of computations from the prior i=1 iteration ("u" first, then "t"). '039 Pat., 4:54-58; Ex. A ¶ 87.

The specification contrasts this "new implementation" of using even/odd pairs to "form a single new iteration" with the "classical implementation" where each iteration is whole unto itself. '039 Pat., 4:54-58; Ex. A ¶ 88.  Each iteration in the classical implementation requires eight words to be loaded each time; but in the new implementation, even/odd iterations that utilize "reversing" only need, on average, four words loaded per iteration.  This is summarized below:

**Classic Implementation** (*without* categorizing/unrolling and reversing sequence of computations):

| i | Reverse? | Words Reused | Words Loaded | # Words Loaded |
|---|---|---|---|---|
| 0 | no | (none) | A-H | 8 |
| 1 | no | (none) | A-H | 8 |
| 2 | no | (none) | A-H | 8 |

**New Implementation** (*with* categorizing/unrolling and reversing sequence of computations):

| i | Reverse? | Words Reused | Words Loaded | # Words Loaded |
|---|---|---|---|---|
| 0 (even) | no | (none) | A-H | 8 |
| 1 (odd) | yes | A, E, F, G, H | B, C, D | 3 |
| 2 (even) | yes | A, B, C | A, E, F, G, H | 5 |

*See generally* '039 Pat., 3:51-4:63.  The patent teaches that "[t]he average number of words A-H loaded per original iteration in our new implementation is four (eight 32-bit loads) instead of eight (sixteen 32-bit loads) in the classic implementation."  '039 Pat., 4:60-63.  Hence, eight words (A-H) are loaded in the original iteration, but under the new implementation, on average, only four words are loaded per each even/odd iteration:  three in i=1 (B, C, D) and five in i=2 (A, E, F, G, H), where $(3+5) \div 2 = 4$; Ex. A ¶ 87.

14

> b.  *Defendants misapply the claim language and the patent's teachings*

Defendants' indefiniteness argument is grounded on two significant errors.  First, Defendants include the eight words loaded at the i=0 iteration in calculating the "average number of words" per iteration.  Second, Defendants say no words are loaded in the i=1 iteration. Defendants are wrong on both counts.  Ex. A ¶ 89.

On the first, the claim requires, "*said reversing resulting in an average number of words that need to be loaded into the registers per iteration being reduced by at least one-half.*"  '039 Pat., claim 1.  By its plain language, "reversing" is the requisite step from which the claimed "average" results – no reversing necessarily means no reduction in the "average number of words that need to be loaded."  Ex. A ¶ 90.  This is consistent with the specification's example, where reversing does not happen at i=0, and the average is determined only from subsequent iterations (i=1, i=2, etc.) where reversing does happen.  *See* '039 Pat., 4:60-63; *supra* § II.B.2.a.

On the second, Defendants contend the specification says "the odd iteration requires loading no words into registers," and cite column 4, lines 60-63 of the patent as support. Dkt. 100 at 14.  But that citation says no such thing.  A handful lines above, at lines 51-55, the specification states the opposite: referring to the "odd iteration, i=1," it says "B-D are then loaded."  039 Pat., 4:51-55.  Thus, *three* words are loaded at the odd iteration, not zero. Ex. A ¶ 92.

These two fundamental errors underlie Defendants' erroneous conclusion that, with respect to the specification's Pseudocode 2 example, "[a]fter three iterations, that average number of words that need to be loaded per iteration is 4.33 (13 words ÷ 3 iterations)."  Dkt. 100 at 14; Ex. A ¶ 93.  Defendants' positions are summarized below:

| i | # Words Loaded |
|---|---|
| 0 (even) | 8 |
| 1 (odd) | 0 |
| 2 (even) | 5 |

15

To arrive at 4.33, Defendants summed the number of words loaded in the three iterations and divided by three:  $(8+0+5)/3 = 4.33$.  Dkt. 100 at 14.  This is an error for at least the reasons above: the number of words loaded at i=1 is not "0," it is "3" ('039 Pat., 4:51-55); and the words loaded at i=0 are *not* added into the determination of the average number of words loaded, both because i=0 is an initial iteration that does not "reverse" any prior sequence of computations (there are none), and because the specification makes plain that it is not counted (*id.*, 4:61-63).  Correcting these errors results in the specification's stated average of four words loaded: $(3 + 5) / 2 = 4$.[7]

Defendants' reliance on *Halliburton* is inapposite.  Dkt. 100 at 15. There, whether a "fragile gel" that was "capable of suspending drill cuttings and weighting materials at rest" depended on a skilled artisan's assessment of "a wide variety of factors."  *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1254-55 (Fed. Cir. 2008) (holding composition claims may be indefinite where infringement depends on circumstances in which the composition is used).  Here, claim 1 does not require evaluating extraneous circumstances to determine whether there is infringement when the same method is performed, and Defendants identify none.

### 3.  "advanced processor architecture to leverage capabilities" (claim 3)

| Defendants' Construction | Plaintiffs' Construction |
|---|---|
| Indefinite | "processor architecture capable of loading/storing at least double words, i.e., 64-bit words, to leverage capabilities" |

Claim 3 recites "assigning state words to registers within an ***advanced processor architecture*** to leverage capabilities of the advanced processor architecture."  '039 Pat., claim 3.

---

[7] Defendants' inclusion of the 8 words from i=0 in its calculation of the average is wrong for the additional reason that doing so would read out the preferred embodiment ('039 Pat. 3:51-4:63) – if "8" is included, there is no possibility of the average load ever being "four," as the example states (*id.* 4:60-63) – the average would approach 4, but never actually be 4. *Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*, 790 F.3d 1298, 1304 (Fed. Cir. 2015) ("A construction that excludes *all* disclosed embodiments … is especially disfavored."); Ex. A ¶¶ 91, 94.

Acting as lexicographer, the inventors expressly identified the capabilities that define an "advanced processor architecture":

> [T]he register assignment takes into consideration the possibility of leveraging the *capabilities of more advanced processor features, specifically load/store double word, i.e., 64-bit word*, which is found in ARM architectures starting from ARMv5te.

''039 Pat. 5:30-34 (italics added).   The patentees spelled out "*specifically*" what advanced processors must be capable of: they have to be able to load and store double-words, "i.e., 64-bit words." *Id.*, 5:30-34; Ex. A ¶¶ 95-96; *see also Astrazeneca AB, Aktiebolaget Hassle, KBI-E, Inc. v. Mut. Pharm. Co.*, 384 F.3d 1333, 1339 (Fed. Cir. 2004) ("solubilizer" defined with reference to embodiments having defining features).   The patent's use of "specifically" operates like the expression "i.e." (meaning, "that is"), signaling the inventors' intent to define what precedes it. *See Tf3 Ltd. v. Tre Milano, LLC*, 894 F.3d 1366, 1372 (Fed. Cir. 2018) (discussing "i.e."). This provides sufficient teaching for a POSITA to understand the claim with reasonable certainty.  Ex. A ¶ 96.   *Guangdong*, 936 F.3d at 1360 (no indefiniteness where "the written description … provides express definitions").   Indeed, the use of "specifically" provides "definite" guidance. *Kouri v. Fed. Express Corp.*, No. 2:21-CV-08066-SPG-JEM, 2023 WL 3431288, at *7 (C.D. Cal. Jan. 13, 2023) ("'specifically' means 'in a definite and exact way'"); *Gaddis v. United States*, 381 F.3d 444 (5th Cir. 2004) (Smith J., dissenting) (similar).

Plaintiffs' lexicography-based construction does not limit the claim to an "example" from the specification.  *Contra* Dkt. 100 at 16.  The specification identifies "load/store double-word" as *the* defining features of an advanced processor architecture using the word "*specifically*," which is the opposite of exemplary language.  *See supra*; Ex. A ¶ 97.  Accordingly, *Interval Licensing* (cited by Defendants) is inapposite because the term there was part of an "e.g." phrase, *i.e.*, it was in fact an *example*.  766 F.3d at1373.  Here, it is definitional.  Ex. A ¶ 97.

Defendants' reliance on dependent claim 5 is misplaced.  Under the doctrine of claim differentiation, claim 5's express recitation of "data preloading" creates a "strong" presumption that claim 3 does not require it.  *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004).  The doctrine does *not*, however, apply to claim 5's recitation of "double word loading and storing" because the specification defines the "advanced processor architecture" of claim 3 as having those features (*see* above).  *Id.* (the "presumption can be overcome if the circumstances suggest a different explanation"); *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1332 (Fed. Cir. 2009) (presumption "does not trump the clear import of the specification").

### 4.   "ARM type processors" (claim 4)

| Defendants' Construction | Plaintiffs' Construction |
|---|---|
| Indefinite | "processors with ARM architecture" |

The plain and ordinary language of the claim, and the well-known meaning of an industry term supports Plaintiffs' construction.  Ex. A ¶¶ 98-100.  The specification teaches that "[t]he implementation of SHA-512 on an ***advanced reduced instruction set computer (risc) machine type ARM processor***, such as the ARMv5t architecture, is a challenging task."  '039 Pat., 1:44-47 (emphasis added).  As a POSITA would have understood, "advanced reduced instruction set computer (risc) machine" is a well-known family of processor architecture that is commonly referred to by its acronym "ARM."  Ex. A ¶ 99; Exs. E-G.  A POSITA would have understood that "advanced reduced instruction set computer (risc) machine ***type***" means "[ARM] ***type***."  Ex. A ¶ 99.  The patent also makes clear that "[ARM] type" is synonymous with "ARM."  Ex. A ¶ 99.  Indeed, the specification equates "[ARM] type" with "ARM" ('039 Pat., 1:45-46) and consistently uses "ARM" in reference to "ARM architecture" and "ARM processor."  *Id.* at 5:33, 5:47, 5:57-59, Abstract; *Pickholtz v. Rainbow Techs., Inc.*, 284 F.3d 1365, 1373 (Fed. Cir. 2002) (terms were synonyms where "the patent … provides no indication that the two terms mean different things").

18

In so doing, the patent makes clear that an ARM type processor, *i.e.*, an ARM processor, is a processor with ARM architecture. *Id.* at 5:57-59 ("an ARM processor such as an ARM processor which conforms to the ARMv5tarchitecture"), 5:33-34 (providing example of "ARM architectures" as those "starting from ARMv5te"); Ex. A ¶ 99.

Defendants' "syntactical" argument is not properly before the Court. The parties elected to brief the construction of "ARM type processor," not the entirety of claim 4. Regardless, the specification teaches that an architecture can comprise a processor. *See, e.g.*, '039 Pat., 1:44-47 (ARMv5t architecture includes "[ARM] type" processor); Ex. A ¶ 100.

### 5. "consuming state values residing in the registers at an end of an iteration at a beginning of a following iteration" (claim 6)

| Defendants' Construction | Plaintiffs' Construction |
| --- | --- |
| Indefinite | "using state values residing in the registers at an end of an even or odd iteration at a beginning of a following odd or even iteration" |

The intrinsic evidence supports Plaintiffs' construction. Ex. A ¶¶ 101-104. The plain language of the claim requires "consuming"[8] something and indicates *when* the consuming happens ("at a beginning of a following iteration") and *what* is consumed ("state values residing in the registers at an end of an iteration").; Ex. A ¶ 102-103. A POSITA would have understood that "an iteration" in claim 6 refers to an even or odd iteration, while "a following iteration" is the next "odd or even" iteration. Ex. A ¶ 103. Claim 1 (from which claim 6 depends) provides context. Claim 1's "reversing" step (discussed in detail above at II.B.2) concerns the use of values in registers during even and odd iterations, thus the "iterations" in claim 6 are even or odd iterations. *Id.* The specification explains that the invention "reus[es] values from the previous iteration that are still in the registers," meaning values residing at the end of an iteration (even or odd) are used

---

[8] Here, "consuming" means "using." '039 Pat., 2:10-11, 2:27-29, 3:51-54, 4:51-53; Ex. A ¶ 102.

in the next (odd or even).  '039 Pat., 3:51-54; Ex. A ¶ 103.  This technique is laid out in the Pseudocode 2 example in the specification, which states, "At the end of [an] even iteration … values found in registers … are directly used in *the following odd iteration*," and "at the end of this odd iteration … values … are readily available in registers to be consumed at the beginning of *the following even iteration*," and "*an even iteration followed by an odd iteration* form a single new iteration of the loop." '039 Pat., 4:49-60.  A POSITA would have understood that the iterations in claim 6 are sequential even/odd or odd/even iterations.  Ex. A ¶ 103.

Defendants contrast "*a* following iteration" in the claim with "*the* following iteration" in the specification but that does not support indefiniteness.  That the former is broader is of no moment because "breadth is not indefiniteness," *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1367 (Fed. Cir. 2017) ("[T]he inference of indefiniteness simply from the scope finding is legally incorrect."), and Defendants offer *no* evidence that a POSITA would not have understood the scope of the claim with reasonable certainty—only attorney argument.  *See* fn. 6, *supra*.

Defendants also disprove their "grammatically indecipherable" argument by deciphering the claim's correct meaning.  Dkt. 100 at 19 ("'at an end of an iteration' could refer to … 'values residing in the registers'"; "'at a beginning of a following iteration' could … refer to 'consuming'"); Ex. A ¶ 104.  They also fail to meet their burden, as "merely identify[ing] different ways one could interpret" the claim does not show indefiniteness.  *ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*, 35 F.4th 1345, 1351 (Fed. Cir. 2022).  Defendants' other interpretations are also incorrect.  *See supra*.  Moreover, Defendants' offer *no* evidence that a POSITA would not understand the claim scope with reasonable certainty—only attorney argument.  *See* fn. 6, *supra*.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order finding the above disputed terms not indefinite, adopting Plaintiffs' proposed constructions.

20

Dated: July 21, 2026

Mark D. Siegmund
Texas Bar No. 24117055
**Cherry Johnson Siegmund James, PC**
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76720
Tel: (254) 732-2242
msiegmund@cjsjlaw.com

William D. Ellerman
Texas Bar No. 24007151
**Cherry Johnson Siegmund James, PC**
One Glen Lakes Tower
8140 Walnut Hill Lane, Suite 105
Dallas, Texas 75231
Tel: (254) 732-2242
wellerman@cjsjlaw.com

Respectfully Submitted,

*/s/ Khue V. Hoang*
Khue V. Hoang *(pro hac vice)*
Patrick R. Colsher
**Reichman Jorgensen Lehman & Feldberg LLP**
650 Fifth Avenue, Suite 2320
New York, NY 10019
Tel: (212) 381-1965
khoang@reichmanjorgensen.com
pcolsher@reichmanjorgensen.com

Matthew G. Berkowitz
Courtland L. Reichman *(pro hac vice)*
Michael M. Polka
Michael Caulkins
**Reichman Jorgensen Lehman & Feldberg LLP**
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel: (650) 623-1401
mberkowitz@reichmanjorgensen.com
creichman@reichmanjorgensen.com
mpolka@reichmanjorgensen.com
mcaulkins@reichmanjorgensen.com

Christine E. Lehman
Adam Adler *(pro hac vice)*
Philip J. Eklem
**Reichman Jorgensen Lehman & Feldberg LLP**
1909 K Street, NW, Suite 800
Washington, DC 20006
Tel: (202) 894-7310
clehman@reichmanjorgensen.com
peklem@reichmanjorgensen.com

Vivek P. Shankam *(pro hac vice)*
**Reichman Jorgensen Lehman & Feldberg LLP**
901 S. MoPac Expressway, Bldg. 1, Suite 270
Austin, TX 78746
Tel: (650) 623-1401
vshankam@reichmanjorgensen.com

*Attorneys for Plaintiffs*
*Malikie Innovations, Ltd. and*
*Key Patent Innovations, Ltd.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that all counsel of record are being served with a copy of the foregoing document via the Court's CM/ECF system on July 21, 2026.

*/s/ Mark D. Siegmund*
Mark D. Siegmund