**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| MALIKIE INNOVATIONS LTD. and KEY PATENT INNOVATIONS LTD., <br><br> Plaintiffs, <br><br> v. <br><br> FOUNDRY DIGITAL LLC; FORTITUDE MINING, LLC; RIOT PLATFORMS, INC.; AND CIPHER DIGITAL INC. F/K/A CIPHER MINING INC., <br><br> Defendants, <br><br> SHENZHEN MICROBT ELECTRONICS TECHNOLOGY CO., LTD., <br><br> Intervenor-Defendant. | Civil Action No. 7:25-CV-00567 <br><br> **JURY TRIAL DEMANDED** |

**<u>DEFENDANTS' REPLY CLAIM CONSTRUCTION BRIEF</u>**

**TABLE OF CONTENTS**

I.    THE '286 PATENT ............................................................................................ 2

    A.    Claim 1:  "A method for performing, on a cryptographic apparatus, a Montgomery-style reduction in a cryptographic operation"................................. 2

    B.    Claim 1:  "instead of a modulus used in performing a standard Montgomery reduction"................................................................................ 4

II.   THE '039 PATENT ............................................................................................ 5

    A.    Claim 1:  "A method for maximizing a number of registers at an end of an iteration of a hash algorithm for use in a next iteration" ........................................ 5

    B.    Claim 1:  "said reversing resulting in an average number of words that need to be loaded into the registers per iteration being reduced by at least one half"................................................................................................... 6

    C.    Claim 3:  "advanced processor architecture to leverage capabilities".................... 8

    D.    Claim 4:  "ARM type processors" ............................................................. 9

    E.    Claim 6:  "consuming state values residing in the registers at an end of an iteration at a beginning of a following iteration"................................................. 10

# TABLE OF AUTHORITIES

Page(s)

*Alnylam Pharms., Inc. v. Moderna, Inc.*,
138 F.4th 1326 (Fed. Cir. 2025) ...................................................................................9

*Bio-Rad Labs., Inc. v. 10X Genomics Inc.*,
967 F.3d 1353 (Fed. Cir. 2020)....................................................................................2

*Bicon, Inc. v. Straumann Co.*,
441 F.3d 945 (Fed. Cir. 2006)...................................................................................4, 6

*Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*,
289 F.3d 801 (Fed. Cir. 2002)......................................................................................5

*Halliburton Energy Servs., Inc. v. M-I LLC*,
514 F.3d 1244 (Fed. Cir. 2008).....................................................................................6

*In re Xencor, Inc.*,
130 F.4th 1350 (Fed. Cir. 2025) ...................................................................................5

*Interval Licensing LLC v. AOL, Inc.*,
766 F.3d 1364 (Fed. Cir. 2014)..................................................................................3, 5

*Liberty Ammunition, Inc. v. United States*,
835 F.3d 1388 (Fed. Cir. 2016)......................................................................................5

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
789 F.3d 1335 (Fed. Cir. 2015)...........................................................................1, 4, 8, 10

The definiteness requirement ensures that the public has notice of the scope of the claimed invention with particularity. As Defendants' opening brief showed, the asserted claims of the '286 and '039 patents fail the definiteness requirement because the intrinsic record leaves the claims susceptible to multiple interpretations that make it impossible to determine their scope with reasonable certainty. In response, Plaintiffs rely heavily on the opinions of Dr. Paul Martin to choose among those multiple alternatives and, in many instances, simply assign no meaning to the disputed claim language. But the Federal Circuit has rejected that approach and held that *ex post* expert opinions, such as Dr. Martin's, cannot overcome an intrinsic record that leaves the claims susceptible to multiple interpretations. *See Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1342 (Fed. Cir. 2015) ("A party cannot transform into a factual matter the internal coherence and context assessment of the patent simply by having an expert offer an opinion on it."). That is particularly true here given that Dr. Martin himself lacked the qualifications of a person of ordinary skill in the art as of the patents' priority dates and purportedly obtained the perspective of a person of ordinary skill as of the priority dates for this litigation. *See* Danford Decl. Ex. 1 ("Martin Dep.") at 26:5-9 ("Q You did not possess the qualifications of a person of ordinary skill in the art until years after the priority date for the '286 and '039 patents, correct? A Correct."), 28:1-4 ("Q That work that you undertook to put yourself in that perspective [of a person of ordinary skill as of the priority date], that was work that you did for this litigation, correct? A Yes, that's correct.").

In any event, Plaintiffs' response and Dr. Martin's opinions simply reinforce the indefiniteness of the disputed terms. For several terms, Plaintiffs cannot identify what the claim language requires and therefore assign it no meaning. And for others, Plaintiffs have adopted strained interpretations that contradict the express claim language. The fact that Plaintiffs cannot give meaning to the claim language from the intrinsic record confirms that the claims are indefinite.

1

## I.    THE '286 PATENT

### A.    Claim 1:  "A method for performing, on a cryptographic apparatus, a Montgomery-style reduction in a cryptographic operation"

Plaintiffs' position that the preamble of claim 1 is not limiting in its entirety parses the claim language too finely.  Plaintiffs concede that "a cryptographic apparatus" and "a cryptographic operation" are limiting because they provide antecedent basis for other claim elements.  Dkt. 127 at 3 n.4.  The only other element of the preamble is "a Montgomery-style reduction," which is part of the "cryptographic operation."  '286 patent, 9:24 ("a Montgomery-style reduction *in a cryptographic operation*" (emphasis added)).  The "cryptographic operation" cannot be limiting while excluding an express element of the cryptographic operation.  *Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1371 (Fed. Cir. 2020) (holding entire preamble limiting where "[t]he language relied upon for antecedent basis in the preamble at issue is intertwined with the rest of the preamble").  Indeed, the testimony from Plaintiffs' expert confirms that the Montgomery-style reduction is integral to the claimed "cryptographic operation."  *See* Martin Dep. at 36:15-22 ("Q … Claim 1 relates to a method of performing a cryptographic operation, correct?  A Yes.  Well, sure.  A Montgomery-style reduction in a cryptographic operation.  Q That's right.  So the cryptographic operation that's claimed includes a Montgomery-style reduction, correct?  A Correct.").  The method steps in the claim are not structurally complete because they recite generic computing functions without identifying what is computed (*i.e.*, a Montgomery-style reduction).  Similarly, a Montgomery-style reduction is not an intended result; it is the computation that is performed under the claimed method.  Martin Dep. at 36:3-7 ("Q … The particular way of performing modular arithmetic claimed in the '286 patent is a Montgomery-style reduction, correct?  A Yes, I believe that's what the patentees call it.").

While the Court previously held the preamble of claim 1 is not limiting in *Malikie*

*Innovations Ltd. v. Mara Holdings, Inc.*, No. 7:25-cv-222-DC-DTG, Dkt. 80 at 15-17 (W.D. Tex. Mar. 12, 2026), Defendants are raising a different issue. In *Mara*, the parties did not address the fact that "a cryptographic operation" is limiting and that "a Montgomery-style reduction" is an express element of that "cryptographic operation." A "Montgomery-style reduction" cannot be separated from the admittedly limiting "cryptographic operation" of which it is a part.

Plaintiffs' position also reinforces the indefiniteness of the term "Montgomery-style reduction." While Plaintiffs assert the patent specification includes an example of a "Montgomery-style reduction" (*see* Dkt. 127 at 5), Plaintiffs are not asserting that the claim is limited to that example. Merely identifying an example within the scope of the claim does not render the claim definite where the bounds of the claim are not defined with reasonable certainty. *See Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1372 (Fed. Cir. 2014). Plaintiffs tout their reliance on their claim construction expert, but Dr. Martin's deposition testimony underscores the indefiniteness of "a Montgomery-style reduction." For example, Dr. Martin testified that a "Montgomery-style reduction" is the generic steps of "obtaining, computing, and outputting" recited in the claim, Martin Dep. at 36:23-37:4, which would render the term entirely superfluous. Dr. Martin was unable to define the universe of mathematical expressions encompassed by claim 1. *Id.* at 42:23-43:7 ("I don't know what that universe looks like, but if you show me one, I might be able to think of it."). Dr. Martin was also unable to say whether the scope of a "Montgomery-style reduction" is broader than "a Montgomery-reduction." *Id.* at 40:22-41:13 ("It's kind of a judgment call as to whether something is broad or not unless you perform a full analysis, which I have not."). And when presented with a particular algorithm, Dr. Martin was unable to say whether that algorithm constituted "a Montgomery-style reduction." *Id.* at 45:20-48:19. At bottom, Plaintiffs have no answer to what "a Montgomery-style reduction" is, and their position that "a

3

Montgomery-style reduction" is simply performing the steps in the body of the claim (*see* Martin Dep. at 36:23-37:4) impermissibly gives the term no meaning. *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 951 (Fed. Cir. 2006) ("[C]laim language should not [be] treated as meaningless.").

**B.    Claim 1:  "instead of a modulus used in performing a standard Montgomery reduction"**

As Defendants explained (Dkt. 100 at 7-8), the term "instead of a modulus used in performing a standard Montgomery reduction" is indefinite because it does not define what, if any, activity is required to practice this claim element.  For example, does the claim require having "a modulus used in performing a standard Montgomery reduction" and then not using it?  Or can the claim be practiced without possessing the modulus at all?  Both alternatives are encompassed by the plain language, and the claim cannot be rendered definite by offering an expert opinion that chooses between those alternatives years later in litigation.  *See Teva*, 789 F.3d at 1342.

Plaintiffs' position that this claim element requires utilizing a value that is a function of the modulus but not the modulus itself (Dkt. 127 at 6) fails to give this claim element any independent meaning.  The surrounding text ("computing a modified operand using a reduction value … the reduction value being a function of the modulus" ('286 patent, 9:27-32)) already provides that a reduction value is a function of the modulus, but not the modulus itself.  Dr. Martin testified that the language "instead of a modulus used in performing a standard Montgomery reduction" excludes the identity function (*i.e.*, where the reduction value is the modulus as in a standard Montgomery reduction).  Martin Dep. 54:16-55:3.  But the claim already recites "a Montgomery-style reduction," which Dr. Martin explained excludes a standard Montgomery reduction.  *Id.* at 37:11-20, 45:9-19.  Plaintiffs' position would impermissibly render the phrase "instead of a modulus used in performing a standard Montgomery reduction" superfluous.  *Bicon*, 441 F.3d at 950 ("[C]laims are interpreted with an eye toward giving effect to all terms in the claim.").

4

## II.    THE '039 PATENT

### A.    Claim 1:  "A method for maximizing a number of registers at an end of an iteration of a hash algorithm for use in a next iteration"

"Maximizing" is not a mere statement of intended purpose, and the method steps recited in the body of the claim are not structurally complete without it.  "Maximizing" distinguishes the claimed steps from those that merely increase the number of registers and thus "is essential to understand limitations or terms in the claim body."  *Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002).  Plaintiffs' position that "maximizing" is not a limitation impermissibly seeks to expand the claimed method so that it includes steps that merely increase the number of registers without maximizing them.  "[A] number of registers" is admittedly limiting (*see* Dkt. 127 at 9), and courts are generally "'disinclin[ed]' to 'splic[e]' a preamble into limiting and non-limiting parts," especially where "the preamble … 'cannot be neatly packaged into two separate portions.'"  *In re Xencor, Inc.*, 130 F.4th 1350, 1358 (Fed. Cir. 2025) (internal citations omitted).  Plaintiffs are incorrect that the preamble here can be spliced.  "[A] number of registers" is necessarily intertwined with the rest of the preamble and is meaningless without the recited step of "maximizing a number of registers."

If limiting, "maximizing" renders claim 1 indefinite.  Maximizing is a term of degree, and the intrinsic record provides no objective basis on which to measure whether the number of registers is maximized.  *See Liberty Ammunition, Inc. v. United States*, 835 F.3d 1388, 1396-98 (Fed. Cir. 2016) ("[C]laims having terms of degree will fail for indefiniteness unless they 'provide objective boundaries for those of skill in the art' when read in light of the specification and the prosecution history." (quoting *Interval Licensing*, 766 F.3d at 1370-71)).  Plaintiffs do not give the term "maximizing" any independent meaning and instead would interpret "maximizing" to mean "what occurs from performing the steps recited in the body of the claim."  Dkt. 127 at 11.

Plaintiffs' position violates the fundamental principle that "claim language should not [be] treated as meaningless," *Bicon*, 441 F.3d at 951, and the fact that Plaintiffs cannot themselves any assign any meaning to the term "maximizing" confirms that it is indefinite.

**B.    Claim 1: "said reversing resulting in an average number of words that need to be loaded into the registers per iteration being reduced by at least one half"**

It is undisputed that the manner of calculating "an average number of words that need to be loaded into the registers per iteration" ('039 patent, 11:44-46) affects whether this claim element is met by a given algorithm. That is because, among other things, the "average number of words that need to be loaded" changes depending on which iterations of the algorithm are included in the calculation. Martin Dep. 73:22-74:5 ("The average number of loads changes depending on how many iterations you include in the average …"). And the calculations from Plaintiffs' own expert show that the same algorithm will satisfy the claim requirement of reducing the average number of words by at least one half if the first iteration of the algorithm is excluded but will not meet that claim requirement if the first iteration of the algorithm is included. *See* Martin Decl. ¶¶ 86-87 (calculations including first iteration), ¶ 90 (calculations excluding first iteration). If the same algorithm can satisfy or not satisfy the claim based on how the average is calculated, the claim is indefinite. *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1254-55 (Fed. Cir. 2008).

The intrinsic record does not resolve the indefiniteness of this claim element. Plaintiffs assert that the first iteration (i=0) must be excluded from the calculation because the first iteration is not "reversed." Dkt. 127 at 13. But that assertion is wrong for at least two reasons.

***First***, the claim language requires calculating an "average … ***per iteration***" for the algorithm. '039 patent, 11:38-49. The first iteration is an iteration of the algorithm, and the claim language specifies that the average for the algorithm is calculated "per iteration" without regard to whether the iteration is "reversed" or not. Plaintiffs' assertion that only iterations that are

6

"reversed" may be included in the calculation is not supported by the claim language.

     **Second**, even if Plaintiffs were correct that only the "reversed" iterations may be included, the first iteration (i=0) is reversed. Plaintiffs' assertion that i=0 is not reversed rests on the understanding that sequences are "reversed" only if "they are a 'reverse' of any prior sequence," and the first iteration cannot be reversed because "it is the first time these computations happen." Dkt. 127 at 13; *see also* Martin Decl. ¶ 86; Martin Dep. 74:25-75:9 ("Reversed means whether the sequence of computations is a reversal of any prior sequence."). Based on that understanding, Plaintiffs say that **all** iterations after the first iteration are "reversed," including the odd iterations. *See* Martin Dep. 75:16-76:8 ("Q And so in your accounting, the even iteration i=0 is not reversed, correct? A Correct. Q But then every iteration after i=0 is reversed, correct? A Correct. Q So the odd iteration i=1 is reversed in your opinion, correct? A Yes."). But the claim does not define "reversed" that way, and it certainly does not recite reversing the odd iterations. The claim recites "reversing a sequence of computations **in the even iterations** to those in the odd iterations." '039 patent, 11:43-45 (emphasis added). Under the claim language, the first iteration (i=0) is reversed. i=0 is undisputedly an even iteration. Martin Dep. 74:10-11 ("Q So i=0 is an even iteration, correct? A Correct."). And the sequence of computations in i=0 (t→u) is reversed to those in the odd iteration i=1 (u→t), as Table 1 from Dr. Martin's declaration illustrates:

| i | Category | Reversed? | Sequence | Words Reused | Words Loaded | # Loads |
|---|----------|-----------|----------|--------------|--------------|---------|
| 0 | even | no | t→u | none | A-H | 8 |
| 1 | odd | yes | u→t | A, E, F, G, H | B, C, D | 3 |

Martin Decl. ¶ 86; Martin Dep. 77:7-11 ("Q So what this column is indicating is the sequence of computations in each iteration; is that right? A Correct. I believe that is correct based on my understanding of your question."). Plaintiffs' argument that i=0 should be excluded because it is not "reversed" contradicts how the claim describes the iterations that are reversed.

The example from the patent's specification does not clarify matters.  For example, while Plaintiffs' expert focused on how many words A-H need to be loaded per iteration, the specification describes additional words (Ki and w) that need to be loaded to perform the exemplified algorithm. *See* '039 patent, 3:49-51 ("However, all the values A-H, Ki and the ws require load operations from the stack into the registers to undergo the specified functions."), *id.* at 4:64-66 ("In each of the first 16 iterations, a new Ki is loaded and a new w is formed by loading eight bytes of the input data one byte at a time into registers."); *see also* Martin Dep. 86:13-15 ("Q  Okay.  So Ki is a word, correct?  A  Correct."), 89:24-90:5 ("[A] particular W is a word.").  Nothing in claim 1 excludes those additional words that the specification explicitly states are loaded when calculating the average.  Yet Dr. Martin did not count them as words that are loaded in his calculation, which demonstrates further ambiguity in how to calculate the claimed average number of words.

Finally, Plaintiffs assert that their interpretation is correct because including i=0 would exclude the example from the patent's specification. Dkt. 127 at 16 n.7.  But that is precisely why the claim is indefinite.  The claim is susceptible to multiple interpretations under which the same algorithm might or might not satisfy the claim requirement of the average number of words per iteration being reduced by at least one half.  The fact that Plaintiffs have offered a litigation-driven expert opinion that contradicts the claim language to choose one of those possible interpretations does not resolve the indefiniteness problem.  *See Teva*, 789 F.3d at 1342.

## C.    Claim 3:  "advanced processor architecture to leverage capabilities"

The '039 patent does not define the bounds of what constitutes an "advanced processor architecture" ('039 patent, 11:54-55) with reasonable certainty.  As Plaintiffs' own expert conceded, "there are lots of features that people might consider advanced," Martin Dep. at 107:20-108:2, and the only guidance provided in the patent is that an "advanced processor architecture" has "capabilities of the advanced processor architecture," '039 patent, 11:54-56.

Plaintiffs position hinges on a single sentence in the specification: "Additionally, the register assignment takes into consideration the possibility of leveraging the capabilities of more advanced processor features, specifically load/store double-word, i.e., 64-bit word, which is found in ARM architectures starting from ARMv5te." '039 patent, 5:30-34; Martin Dep. 104:12-14 ("Q Your opinion hinges on the word 'specifically,' correct? A Correct."), 105:6-105:11 ("Q Okay. Now, your -- your interpretation of this claim hinges on this single sentence in the patent, correct? A That is where it describes what an advanced processor contains."). But Plaintiffs' interpretation is wrong for at least two reasons. *First*, the sentence does not include the term "advanced processor architecture." Plaintiffs' argument requires that this sentence defines a term that it does not use. *Second*, the term "specifically" is not definitional; it is merely identifying a specific example, which is not limiting and falls far short of the exacting standard for lexicography. *See Alnylam Pharms., Inc. v. Moderna, Inc.*, 138 F.4th 1326, 1333 (Fed. Cir. 2025) (distinguishing limiting and non-limiting language in specification). Plaintiffs seek to equate "specifically" with the phrase "i.e." (Dkt. 127 at 17), but that is not how the sentence is drafted. The phrase "i.e." defines "load/store double-word," not "advanced processor architecture." '039 patent, 5:30-34.

Finally, the specification makes clear—in sentences that actually use the term "advanced architectures"—that there are other capabilities of advanced processor architectures, such as "data preloading." *See, e.g.*, '039 patent, 2:16-20. Plaintiffs singular focus on "load/store double word" as the defining feature of an "advanced processor architecture" impermissibly seeks to limit the term to a specific example and ultimately does not resolve the indefiniteness of "advanced processor architecture" because it fails to define the full scope encompassed by the term.

D.    Claim 4: "ARM type processors"

Claim 4 is indefinite for two independent reasons. *First*, the scope of "ARM *type* processors" is undefined. '039 patent, 11:57-58. Plaintiffs assert that "ARM type" means the

9

same thing as "ARM."  Dkt. 127 at 18; Martin Dep. 109:8-10 ("Q  And you interpret ARM-type processor to be synonymous with ARM processor, correct?  A  Yes.").  But that position impermissibly gives no meaning to the word "type."  The fact that Plaintiffs themselves cannot give any meaning to "type" confirms its indefiniteness, and Plaintiffs may not avoid the indefiniteness of the actual claim language by rewriting the claim to omit a word from the claim.

*Second*, the term "ARM type processor" makes no sense in the context of the claim, which states that "the advanced processor architecture comprises ARM type processors."  '039 patent, 11:57-58.  A processor can have a particular architecture, but an architecture is not a processor.  *See* Martin Decl. ¶ 52 ("An ISA may not refer to any one CPU itself …").  The portion of the patent's specification cited by Plaintiffs is consistent with that and simply identifies "the ARMv5t architecture" as the "instruction set" (*i.e.*, architecture) used by the processor.  '039 patent, 1:44-47.  Plaintiffs' assertion that this argument is not properly presented is incorrect.  "ARM type processor" is the only additional element recited in dependent claim 4, and the indefiniteness of that claim term must be assessed in the context of the claim as a whole.

E.    **Claim 6:  "consuming state values residing in the registers at an end of an iteration at a beginning of a following iteration"**

As Defendants explained, this claim term contains multiple prepositional phrases that would lead to alternative meanings depending on which terms they modify.  *See* Dkt. 100 at 19.  Plaintiffs and their expert have advocated that one of those alternative meanings is the appropriate interpretation.  *See* Dkt. 127 at 20; Martin Decl. ¶ 103.  However, the claim as drafted fails to provide the public with notice of what is claimed, and Plaintiffs may not cure that defect by offering an expert opinion years later that chooses one of those potential meanings.  *See Teva*, 789 F.3d at 1342.

Dated:  August 4, 2026

Respectfully submitted,

*/s/ Andrew J. Danford*
John V. Hobgood (*pro hac vice*)
Andrew J. Danford (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND
    DORR LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000
john.hobgood@wilmerhale.com
andrew.danford@wilmerhale.com

Benjamin S. Fernandez (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND
    DORR LLP
1225 17th Street, Suite 2600
Denver, Colorado 80202
(720) 274-3163
ben.fernandez@wilmerhale.com

Laura E. Powell (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND
    DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6294
laura.powell@wilmerhale.com

Melissa R. Smith
Texas State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Tel:  (903) 934-8450
melissa@gillamsmithlaw.com

*Attorneys for Defendant Cipher Digital Inc.*

*/s/  Justin S. Cohen*
Justin S. Cohen
State Bar No. 24078356
    justin.cohen@hklaw.com
Robert S. Hill
State Bar No. 276056
    robert.hill@hklaw.com
Morgan Delabar

11

State Bar No. 24116625
    morgan.delabar@hklaw.com
**Holland & Knight LLP**
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
214.969.1700
214.969.1751 (fax)

Amy Simpson (*admitted pro hac vice*)
CA State Bar No. 241090
    amy.simpson@hklaw.com
**Holland & Knight LLP**
1901 Avenue of the Stars, Suite 1200
Los Angeles, CA  90067
310.201.8900

Deron R. Dacus
State Bar No. 00790553
ddacus@dacusfirm.com
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suire 430
Tyler, Texas 75701
903.705.1117

*Attorneys for Defendants*
*Foundry Digital LLC,*
*Fortitude Mining, LLC, and*
*Riot Platforms, Inc.*

/s/  Timothy T. Wang
Timothy T. Wang
State Bar No. 24067927
    twang@nilawfirm.com
**Ni, Wang & Massand, PLLC**
8140 Walnut Hill Lane, Suite 615
Dallas, Texas 75231
(972) 331-4603
(972) 314-0900 (fax)

*Attorneys for Intervenor-Defendant*
*Shenzhen  MicroBT  Electronics  Technology*
*Co., Ltd.*

12

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all counsel of record via the

Court's ECF system on August 4, 2026.

*/s/ Andrew J. Danford*
Andrew J. Danford
