IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | |
|---|---|
| MALIKIE INNOVATIONS LTD.,<br>KEY PATENT INNOVATIONS LTD.<br><br>Plaintiffs,<br><br>v.<br><br>FOUNDRY DIGITAL LLC; FORTITUDE MINING, LLC; RIOT PLATFORMS, INC.; AND CIPHER DIGITAL INC. F/K/A/ CIPHER MINING INC.,<br><br>Defendants. | CASE NO. 7:25-CV-00567-DC-DTG<br><br>JURY TRIAL DEMANDED |

**PLAINTIFFS' SUR-REPLY CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

**Page**

I. THE '286 PATENT ........ 2

A. "A method for performing, on a cryptographic apparatus, a Montgomery-style reduction in a cryptographic operation" (claim 1; preamble) ........ 2

B. "instead of a modulus used in performing a standard Montgomery reduction" (claim 1) ........ 3

II. THE '039 PATENT ........ 4

A. "A method for maximizing a number of registers at an end of an iteration of a hash algorithm for use in a next iteration." (claim 1; preamble) ........ 4

B. "said reversing resulting in an average number of words that need to be loaded into the registers per iteration being reduced by at least one half" (claim 1) ........ 5

C. "advanced processor architecture to leverage capabilities" (claim 3) ........ 8

D. "ARM type processors" (claim 4) ........ 9

E. "consuming state values residing in the registers at an end of an iteration at a beginning of a following iteration" (claim 6) ........ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*,
616 F.3d 1283 (Fed. Cir. 2010)....9

*Alnylam Pharms., Inc. v. Moderna, Inc.*,
138 F.4th 1326 (Fed. Cir. 2025) ....8

*BASF Corp. v. Johnson Matthey Inc.*,
875 F.3d 1360 (Fed. Cir. 2017)....7, 8

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*,
967 F.3d 1353 (Fed Cir. 2020)....3

*ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*,
35 F.4th 1345 (Fed. Cir. 2022) ....10

*Malikie Innovations Ltd. v. Mara Holdings, Inc.*,
No. 7:25-cv-222-DC-DTG, Dkt. 80 (W.D. Tex. Mar. 12, 2026) ....2

*Nevro Corp. v. Bos. Sci. Corp.*,
955 F.3d 35 (Fed. Cir. 2020)....10

*Nimbelink Corp. v. Digi Int'l Inc.*,
No. 2024-2292, 2026 WL 492037 (Fed. Cir. Feb. 23, 2026) ....5

*Osseo Imaging, LLC v. Planmeca USA Inc.*,
116 F.4th 1335 (Fed. Cir. 2024) ....1

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)....4, 8, 9

*SmithKline Beecham Corp. v. Apotex Corp.*,
403 F.3d 1331 (Fed. Cir. 2005)....7

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
775 F.2d 1107 (Fed. Cir. 1985)....8

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
789 F.3d 1335 (Fed. Cir. 2015)....4

*TomTom, Inc. v. Adolph*,
790 F.3d 1315 (Fed. Cir. 2015)....2, 3

*VLSI Tech. LLC v. Intel Corp.*,
53 F.4th 646 (Fed. Cir. 2022) ....................................................................................3

Defendants ask the Court to find every disputed term indefinite, which it can only do upon a showing of clear and convincing evidence that a POSITA would not have been able to understand the scope of the claims with reasonable certainty. Defendants offer nothing in support, relying instead on uncorroborated attorney arguments. This per se insufficiency dooms Defendants' cause. *See* Dkt. 127 at 11 n.6. Defendants resort to attacking Plaintiffs' expert, Dr. Martin, for not being a person of ordinary skill in the art *at the time of the invention*, *i.e.*, in 2009, when Dr. Martin had not yet matriculated from his Bachelor's program. But precedent is "clear" that Dr. Martin "need ***not*** have acquired that skill level prior to the time of the invention," and he "***can*** acquire the necessary skill level later and develop an understanding of what a person of ordinary skill knew at the time of the invention." *Osseo Imaging, LLC v. Planmeca USA Inc.*, 116 F.4th 1335, 1340-41 (Fed. Cir. 2024) (emphasis added). Dr. Martin undisputedly meets the qualifications of a POSITA in this case[1], which is all the law requires, *id*. at 1340, and his testimony is unrebutted by that of anyone else so qualified.

Defendants' arguments are also legally insufficient. As to the preamble terms at issue, Defendants construe them in a vacuum, divorced from the intrinsic context, and by analogy to non-analogous preamble in other cases. A correct application of the governing legal framework shows, however, that none of the preamble terms at issue are limiting. On indefiniteness, besides failing to supply any evidence that a POSITA would have been unable to understand the claims with reasonable certainty, Defendants arguments are based on strained interpretations of the claims that ignore the intrinsic evidence and attempt to manufacture confusion where there is none.

[1] Dr. Martin's declaration explains his qualifications, Dkt. 127-2 (Ex. A) ¶¶1-30, and his deposition testimony corroborates how he developed an understanding of what a POSITA knew at the time of the invention. Dkt. 135-2 (Martin Tr.) at 26:10-27:25.

# I. THE ’286 PATENT

## A. “A method for performing, on a cryptographic apparatus, a Montgomery-style reduction in a cryptographic operation” (claim 1; preamble)

| Defendants’ Construction | Plaintiffs’ Construction |
|---|---|
| Preamble is limiting, and indefinite | The full preamble is not limiting and is not indefinite. |

The same term (“Montgomery-style reduction”) of the same claim was at issue in *Mara*[2]. There, the Court held the term is not limiting because “none of the *Catalina* guideposts are present.” *Mara* at 15-17. Nothing is different here. “Montgomery-style reduction” does not provide antecedent basis for any term in the claim’s body nor was it relied on during prosecution to distinguish prior art. Dkt. 127 at 4; *Mara* at 16. Despite asserting that Montgomery-style reduction is structural, “[D]efendant[s] do[] not identify any missing steps” from the claim body, which “recites all steps necessary to perform the claimed method.” *Mara* at 16-17; *accord* Dkt. 127 at 4 (citing Ex. A ¶¶ 60-62). And while Defendants claim that Montgomery-style reduction is not a mere intended purpose or result, the preamble itself indicates that it is, as the Court held in *Mara*. *Mara* at 16; *accord* Dkt. 127 at 4 (citing Ex. A ¶¶ 60-62); *TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1324 (Fed. Cir. 2015) (noting “standard pattern” of non-limiting preamble).

Defendants’ argument that Montgomery-style reduction “cannot be separated from the admittedly limiting ‘cryptographic operation’ of which it is a part” cannot be squared with *TomTom*. There, the preamble recited “*[a] method for generating and updating data for use in* a destination tracking system of at least one mobile unit comprising.” *Id*. at 1322 (emphasis added). The underlined part was held limiting because it provided antecedent basis for terms in the body. *Id*. at 1323. The italicized part was non-limiting, despite the preamble expressly stating that it is

[2] *Malikie Innovations Ltd. v. Mara Holdings, Inc.*, No. 7:25-cv-222-DC-DTG, Dkt. 80 at 15-17 (W.D. Tex. Mar. 12, 2026) (“Mara Case”).

"***for use in***" the limiting part, because it (a) was not the antecedent basis for any term, (b) only stated the intended use of the invention, and (c) the body of the claim was structurally complete without it. *Id*. at 1324 (emphasis added). The same is true here for "Montgomery-style reduction," making it similarly non-limiting. The preamble in *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353 (Fed Cir. 2020) is not analogous. The entire preamble in that case—"[a] method for conducting a reaction in plugs in a microfluidic system, comprising the steps of"—was limiting because "a reaction" (what the method is "for conducting") and "a microfluidic system" both provided antecedent basis. *Id*. at 1361, 1371. "[A] Montgomery-style reduction" does not.

If the Court comes to a contrary determination that "Montgomery-style reduction" is limiting, then the term is not indefinite. Defendants argue the term is "subjective" or otherwise "superfluous" but cite no evidence in support. Dkt. 127 at 5-6. The patent's examples of "Montgomery-style" reduction ('286 Pat., 2:47-53, 4:40-6:19) show that the term is used to refer to (or is descriptive of) the claimed method. Dkt. 127 at 5-6[3]; Dkt. 127-2 (Ex. A) ¶¶ 66-67; Dkt. 135-2 (Ex. 1) at 36:23-38:8, 42:4-11; *see also VLSI Tech. LLC v. Intel Corp.*, 53 F.4th 646, 653 (Fed. Cir. 2022) ("a construction that introduces redundancy into a claim … is not foreclosed," particularly where "intrinsic evidence makes it clear that the 'redundant' construction is correct").

### B. "instead of a modulus used in performing a standard Montgomery reduction" (claim 1)

| Defendants' Construction | Plaintiffs' Construction |
|---|---|
| Indefinite. | Plain and ordinary meaning. |

Claim 1 recites computing a modified operand using a reduction value "*instead of a modulus* used in performing a standard Montgomery reduction," where the reduction value is "a

[3] With apologies to the Court, citations to Exhibit A in Plaintiffs' responsive brief (Dkt. 127) are off by one paragraph number (shifted one paragraph number too high).

function of the modulus." Dkt. 127 at 6. A POSITA would have understood "instead of a modulus used in performing a standard Montgomery reduction" to have its plain and ordinary meaning: that the reduction value (although it is a function of the modulus) is not itself the modulus. Dkt. 127 at 6-7, Ex. A ¶¶ 69-71.

Defendants offer no evidence to the contrary. Instead, they double down on conclusory attorney arguments and rhetorical questions (which are not evidence) that supposedly identify different ways one could interpret the claim. Dkt. 127 at 7. These different interpretations are rooted in made-up confusion and are divorced from the clear context provided by the claim language and the specification.[4] Beyond that, Defendants argue that Plaintiffs' position would render the "instead of" phrase "superfluous" if the preamble term "Montgomery-style reduction" excludes standard Montgomery reduction. Dkt. 135 at 4. As explained above, "Montgomery-style reduction" is not limiting and can have no such effect. *Supra* § I.A.

## II. THE '039 PATENT

### A. "A method for maximizing a number of registers at an end of an iteration of a hash algorithm for use in a next iteration." (claim 1; preamble)

| Defendants' Construction | Plaintiffs' Construction |
|---|---|
| Preamble is limiting, and indefinite | The full preamble is not limiting and not indefinite. |

A POSITA would understand that "maximizing" a number of registers simply describes the *purpose* of the claimed method—*how* the method is performed is detailed in the claim steps. Dkt. 127 at 10; Dkt. 127-2 ¶¶ 77-81. The specification confirms this, explaining that "maximizing"

[4] Defendants' reliance on *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1342 (Fed. Cir. 2015) is misplaced. *Teva* held that "[t]he meaning one of skill in the art would attribute to [a claim term] in light of its use in the [intrinsic record] is a question of law" reviewed without deference and does not become a question of fact subject to deference simply by having an expert testify on it. *Id*. It did not hold that that expert testimony cannot be relied on to ascertain a POSITA's understanding when resolving an indefiniteness question. *Id*.; *see Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (courts may rely on expert testimony as extrinsic evidence).

the number of registers "is achieved by categorizing the [hash] algorithm iterations into even and odd iterations, where the sequence of computation in the even iteration is reversed in the odd iteration," which correspond to steps of claim 1. '039 Pat., 2:8-14; *see id*., 3:51-59, Abstract. The "maximizing" language in the preamble adds no essential steps or structure to the claim, and because all other *Catalina* guideposts are absent, the term is not limiting. Dkt. 127 at 9-10.

Defendants try to elevate "maximizing" to limiting status by claiming that "maximizing" distinguishes from "merely increas[ing]." Dkt. 135 at 5. No evidence supports this theory. That "a number of registers" is limiting (because it provides antecedent basis for "the registers" in the body) does not require "maximizing" to be limiting too. As explained above, "maximizing" is achieved by performing the steps of the claim; it merely "extoll[s] the virtues of the structurally complete invention contained within the body of the claim." *Nimbelink Corp. v. Digi Int'l Inc.*, No. 2024-2292, 2026 WL 492037, at *3 (Fed. Cir. Feb. 23, 2026); *see id.* ("We have long held that preamble language that merely extolls the benefits or features of the claimed invention does not limit claim scope.").

If limiting, "maximizing" is not indefinite. The specification describes "maximizing" as being "***achieved by*** categorizing the [hash] algorithm iterations into even and odd iterations, where the sequence of computation in the even iteration is reversed in the odd iteration" ('039 Pat., 2:8-14) (emphasis added), meaning it is achieved when the steps of claim 1 are performed. Dkt. 127 at 11-12; Ex. 127-2 (Ex. A) ¶ 81. Defendants' indefiniteness argument lacks any tether.

### B. "said reversing resulting in an average number of words that need to be loaded into the registers per iteration being reduced by at least one half" (claim 1)

| Defendants' Construction | Plaintiffs' Construction |
|---|---|
| Indefinite | "said reversing resulting in an average number of words that need to be loaded into the registers per categorized and unrolled iteration being reduced by at least one half" |

The words of the claim are unambiguous. Claim 1 recites "*reversing* a sequence of computations" that "*result[s] in* an average number of words that need to be loaded into the registers per iteration being reduced by at least one half." The plain language requires that reduction occurs *as a result of* reversing. Dkt. 127 at 12-13; Dkt. 127-2 (Ex. A) ¶¶ 83-84. Reduction therefore concerns only what happens *after* reversing occurs. *Id.* The specification confirms this. The Pseudocode 2 example shows that reversing (and the load reduction that results from it) begins after the initial iteration i=0, starting with the first reversal at i=1. Dkt. 127 at 13-14; Dkt. 127-2 (Ex. A) ¶¶ 85-87.

**Pseudocode 2 Example**

| i | Reverse? | Words Reused | Words Loaded | # Words Loaded |
|---|---|---|---|---|
| 0 (even) | no | (none) | A-H | 8 |
| 1 (odd) | yes | A, E, F, G, H | B, C, D | 3 |
| 2 (even) | yes | A, B, C | A, E, F, G, H | 5 |

The first reversal at i=1 begins the reuse of registers and the reduction of loads such that, on average, the number of loads per iteration is reduced by at least half. *Id.* No reversal (and no load reduction) happens at i=0, making i=0 not within the scope of the claim. *Id.* This plain-language application of the claim is consistent with the '039 Patent's teaching that "[t]he average number of words … ***in our new implementation is four*** … ***instead of eight***," *i.e.*, (3+5)÷2=4. *Id.* (emphasis added); '039 Pat., 4:60-63.

Defendants' indefiniteness positions are based on contrived claim interpretations that are contrary to both the claim language and the specification. Defendants' argument that the claimed average "per iteration" includes iterations that are not reversed is belied by the claim, which limits relevant iterations to those that are the ***result*** of reversing. The claim also recites "***an*** average number of words that need to be loaded into the registers per iteration," which does not require the

average to be across all iterations of an algorithm—only ***an*** average that satisfies the limitations of this element is required.

Defendants argue that the sequence in i=0 (even) is "reversed" as compared to that in i=1 (odd) and therefore must be included in the computation of the average. Dkt. 135 at 7. Not true. The i=0 iteration precedes the i=1 iteration, making it nonsensical to say that the prior iteration is the reverse of the latter. The common sense interpretation, as corroborated by the specification and attested to by Plaintiffs' POSITA expert, is that i=0 is not a reversal of anything and that reversing cannot begin until i=1.

Defendant's argument that claim 1 is indefinite because it does not exclude counting words containing other values in the specification's embodiments (Ki and w) in the average is irrelevant and misleading. Inferring the claim is indefinite by suggesting that it covers different averages involving different variables "is legally incorrect" because "breadth is not indefiniteness." *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1367 (Fed. Cir. 2017).

Defendants' argument that "how the average is calculated" determines "[i]f the same algorithm can satisfy or not satisfy the claim" impermissibly conflates breadth with indefiniteness and claim construction with infringement. Dkt. 135 at 6, 8. There is no dispute about how ***the claim*** says the average is calculated: divide the number of words loaded by the number of iterations involved in loading them. Because "claim 1 unambiguously identifies the bounds of the claim," it cannot be indefinite. *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1340 (Fed. Cir. 2005). Defendants' arguments that the claim does not specify "which iterations or how many iterations … are included" (Dkt. 100 at 13), "where in the algorithmic process that average is calculated" (*id.*), and which words are included (Dkt. 135 at 8), and therefore covers different averages, requires confusing breadth with indefiniteness. *SmithKline Beecham*, 403 F.3d at 1341;

*BASF*, 875 F.3d at 1367. Whether claim 1 reads on certain implementations is a question of infringement, which is taken up only *after* claim construction. *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) ("it is only after the claims have been construed … that the claims, as so construed, are applied … to determine infringement").

### C. "advanced processor architecture to leverage capabilities" (claim 3)

| Defendants' Construction | Plaintiffs' Construction |
|---|---|
| Indefinite | "processor architecture capable of loading/storing at least double words, i.e., 64-bit words, to leverage capabilities" |

The dispute hinges on the meaning of "advanced" in the phrase "advanced processor architecture." Defendants argue that an "advanced" processor architecture could have multiple features. Dkt. 135 at 9. However, the specification—which is "the single best guide" to discerning the meaning of "advanced" processor architecture (*Phillips*, 415 F.3d at 1315, 1321)—"***specifically***" identifies what constitutes "advanced" architecture. Dkt. 127 at 17.

> [T]he register assignment takes into consideration the possibility of leveraging the *capabilities of more advanced processor features, **specifically load/store double word, i.e., 64-bit word***, which is found in ARM architectures starting from ARMv5te.

'039 Pat. 5:30-34. That is definitional. Dkt. 127 at 17; *Phillips*, 415 F.3d at 1321 ("the specification 'acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication'").[5] A POSITA would understand that an "advanced" processor architecture has at least these "specifically" identified features. Dkt. 127-2 (Ex. A) ¶¶ 95-96.

Defendants contend the specification also identifies "data preloading" as another advanced processor capability, but that statement is exemplary, not definitional. '286 Pat., 2:16-20.

[5] *Alnylam Pharms., Inc. v. Moderna, Inc.*, 138 F.4th 1326, 1333 (Fed. Cir. 2025) does not show that the '039 Patent's use of "specifically" is non-definitional. In fact, it shows the opposite, citing multiple authorities indicating that similar words ("specific" and "specify") "connote[] … notions of specificity, definiteness, explicitness, particularity, precision, or detail. *Id*. at 1334.

Moreover, dependent claim 5's inclusion of a "data preloading" limitation creates a strong presumption that claim 3 does not require it. Dkt. 127 at 18.[6] Defendants have no answer to that.

**D. "ARM type processors" (claim 4)**

| Defendants' Construction | Plaintiffs' Construction |
|---|---|
| Indefinite | "processors with ARM architecture" |

The patent is clear that "[ARM] type" is synonymous with "ARM." Dkt. 127 at 18; Dkt. 127-2 (Ex. A) ¶ 98. The specification equates "[ARM] type" with "ARM" ('039 Pat., 1:45-46) and consistently uses "ARM" in reference to "ARM architecture" and "ARM processor." *Id.* at 5:33, 5:47, 5:57-59, Abstract. None of this is disputed. Defendants' argument that "ARM type" cannot be synonymous with "ARM" reads the claim in a vacuum and turns a blind eye to the teachings of the specification. That is not how claims are construed. *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1290 (Fed. Cir. 2010) ("Claim terms are not construed in a vacuum divorced from the specification."); *Phillips*, 415 F.3d at 1313 (a POSITA is deemed to read the claim in the context of the specification).

Defendants also argue that the greater phrase "the advanced processor architecture comprises ARM type processors" does not make sense because "an architecture is not a processor." Dkt. 135 at 10. But this "syntactical" argument has nothing to do with whether a POSITA would understand "ARM type processor" with reasonable certainty. Regardless, the claim does not say that the advanced processor architecture "***is***" a processor, but that it "***comprises*** ARM type processors." The specification teaches that architecture can comprise processors, *see*, *e.g.*, '039 Pat., 1:44-47 (ARMv5t architecture includes "[ARM] type" processor), which is corroborated by

[6] That presumption does not apply to "double word loading and storing." Dkt. 127 at 18.

Dr. Martin's testimony, Dkt. 127-2 ¶ 99; *see id.* ¶ 52 ("Usually, a family of CPUs will all conform to the same ISA."). Defendants cite no evidence to the contrary.

### E. "consuming state values residing in the registers at an end of an iteration at a beginning of a following iteration" (claim 6)

| Defendants' Construction | Plaintiffs' Construction |
|---|---|
| Indefinite | "using state values residing in the registers at an end of an even or odd iteration at a beginning of a following odd or even iteration" |

The plain language of the claim requires "consuming"[7] something and indicates *when* the consuming happens ("at a beginning of a following iteration") and *what* is consumed ("state values residing in the registers at an end of an iteration"); Dkt. 127 at 19-20; Dkt. 127-2 (Ex. A ¶¶ 101-103). Defendants cannot dispute that this is the natural and consistent-with-specification reading of the claim. Instead, Defendants insist there may be other ways to interpret the claim, but are unable to support the plausibility of any of them. This ends the dispute in Plaintiffs' favor. The mere fact that Defendants can manufacture other (incorrect) interpretations—which is all Defendants do—is legally insufficient to show indefiniteness. *Nevro Corp. v. Bos. Sci. Corp.*, 955 F.3d 35, 41 (Fed. Cir. 2020) ("The test is not merely whether a claim is susceptible to differing interpretations. Such a test would render nearly every claim term indefinite so long as a party could manufacture a plausible construction."); *ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*, 35 F.4th 1345, 1351 (Fed. Cir. 2022) ("ClearOne's arguments for indefiniteness merely identify different ways one could interpret self-similar. Just because a term is susceptible to more than one meaning does not render it indefinite.").

[7] Defendants do not dispute that "consuming" means "using." Dkt. 135 at 10; *see* Dkt. 127 at 19.

Dated: August 18, 2026

Respectfully Submitted,

/s/ Khue V. Hoang

Khue V. Hoang *(pro hac vice)*
Patrick R. Colsher
**Reichman Jorgensen Lehman & Feldberg LLP**
650 Fifth Avenue, Suite 2320
New York, NY 10019
Tel: (212) 381-1965
khoang@reichmanjorgensen.com
pcolsher@reichmanjorgensen.com

Matthew G. Berkowitz
Courtland L. Reichman *(pro hac vice)*
Michael M. Polka
Michael Caulkins
**Reichman Jorgensen Lehman & Feldberg LLP**
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel: (650) 623-1401
mberkowitz@reichmanjorgensen.com
creichman@reichmanjorgensen.com
mpolka@reichmanjorgensen.com
mcaulkins@reichmanjorgensen.com

Christine E. Lehman
Adam Adler *(pro hac vice)*
Philip J. Eklem
**Reichman Jorgensen Lehman & Feldberg LLP**
1909 K Street, NW, Suite 800
Washington, DC 20006
Tel: (202) 894-7310
clehman@reichmanjorgensen.com
peklem@reichmanjorgensen.com

Vivek P. Shankam *(pro hac vice)*
**Reichman Jorgensen Lehman & Feldberg LLP**
901 S. MoPac Expressway, Bldg. 1, Suite 270
Austin, TX 78746
Tel: (650) 623-1401
vshankam@reichmanjorgensen.com

Mark D. Siegmund
Texas Bar No. 24117055
**Cherry Johnson Siegmund James, PC**
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76720
Tel: (254) 732-2242
msiegmund@cjsjlaw.com

William D. Ellerman
Texas Bar No. 24007151
**Cherry Johnson Siegmund James, PC**
One Glen Lakes Tower
8140 Walnut Hill Lane, Suite 105
Dallas, Texas 75231
Tel: (254) 732-2242
wellerman@cjsjlaw.com

*Attorneys for Plaintiffs*
*Malikie Innovations, Ltd. and*
*Key Patent Innovations, Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record are being served with a copy of the foregoing document via the Court's CM/ECF system on August 18, 2026.

*/s/ Mark D. Siegmund*
Mark D. Siegmund